UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

In re:

USA SPRINGS, INC.

Debtor.[1]

Case No. 08-11816 (JMD)

Chapter 11

## MOTION FOR ORDER (A) AUTHORIZING THE DEBTOR TO BORROW FUNDS FROM THIRD PARTY IN CONNECTION WITH CERTAIN LOAN COMMITMENT, AND (B) GRANTING CERTAIN PROTECTIONS TO SUCH THIRD PARTY

### [Emergency Determination Requested]

USA Springs, Inc., a Delaware corporation, as a debtor and debtor-in-possession (the "Debtor"), respectfully submits this motion (the "Motion") seeking an order (i) authorizing the Debtor to borrow up to $279,000.00 (the "Advance Amount")[2] from a third party willing to make such funds available on the terms set forth in the Motion or Mr. George Tombarello (the "Third Party")[3] in connection with certain Loan Commitment (as defined below), and (ii) granting certain Protections (as defined below) to the Third Party. In support of this Motion, the Debtor respectfully states as follows:

### Background

1. On June 27, 2008 (the "Petition Date"), the Debtor filed its voluntary petition for relief in the United States Bankruptcy Court for the District of New Hampshire (the "Bankruptcy

---

[1] The Debtor related entities are: USA Springs, Inc., a New Hampshire corporation; Garrison Place Real Estate Investment Trust; Just Cause Realty Trust; and Sweet Review Realty Trust.

[2] The amount needed with respect to the Fees and Deposit if $275,000. One of the terms for Mr. Tombarello to lend the funds to the Debtor is a $4,000 loan expense fee ($2,790 representing one point and $1,210 for loan documentation and counsel fees).

[3] Mr. Tombarello has loaned money to the Debtor before pre-petition but he is not currently a creditor in the Debtor's bankruptcy case.

Court") under Chapter 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The office of the United States Trustee has approved an official committee of unsecured creditors ("Creditors' Committee") on July 15, 2008, as amended on June 24, 2009.

2. The Debtor owns 100% shares of the common stock of USA Springs, Inc., a New Hampshire corporation ("N.H. Corp."), and is the sole beneficiary under the Garrison Place Real Estate Investment Trust ("Garrison Trust"), the Just Cause Realty Trust ("Just Cause Trust"), and the Sweet Review Realty Trust ("Sweet Review Trust", collectively with N.H. Corp., the Garrison Trust, and the Just Cause Trust, the "Debtor Related Entities").

3. On April 1, 2009, the Debtor's chapter 11 proceeding was converted to a proceeding under chapter 7 of the Bankruptcy Code. The Debtor filed an Emergency Motion to Reconsider Order Converting Case to Chapter 7 ("Motion to Reconsider") on April 6, 2009.

4. The Debtor, the Debtor Related Entities, and the Debtor's secured lender, Roswell Commercial Mortgage, LLC ("Roswell"), subsequently entered into a certain Stipulation on Motion to Reconsider Order Granting Motion to Convert Case, dated as of April 27, 2009, as amended, supplemented and in effect from time to time (the "Stipulation"). Pursuant to the Stipulation, a sale of assets of the Debtor and the Debtor Related Entities is contemplated in the Debtor's chapter 11 case.

5. In connection with the Stipulation, the Debtor Related Entities entered into a Jurisdiction Agreement, dated as of May 27, 2009, submitting themselves and their assets to the jurisdiction of the Bankruptcy Court. Amici Real Estate Trust also entered into a separate Jurisdiction Agreement, dated as of May 27, 2009, submitting itself and its assets to the jurisdiction of the Bankruptcy Court.

6.      On April 27, 2009, the Debtor filed a Motion to Approve Stipulation on the Motion to Reconsider which the Court allowed on May 21, 2009. The Court also docketed an Order Re-Converting Case to Chapter 11 on that same date.

7.      Pursuant to the Stipulation, the Debtor agreed to employ Alan Braunstein at Riemer & Braunstein LLP going forward, as new bankruptcy counsel, and Bruce A. Harwood at Sheehan Phinney Bass + Green, Professional Association, as local counsel. After the Debtor's case was reconverted to Chapter 11 in May 2009, the Court approved the applications to employ Mr. Braunstein and Mr. Harwood.

8.      On April 2, 2010, the Debtor filed its fifth Motion for Order Extending (i) the Exclusivity Periods During Which the Debtor May File a Chapter 11 Plan and the Period for Soliciting Acceptances, and (ii) Certain Deadlines Under the Stipulation, which was allowed by the Court on April 6, 2010 (the "Extension Order"). Pursuant to the Stipulation, as amended by the Extension Order, the following relevant deadlines are in effect: (i) filing of the Debtor's chapter 11 plan and related disclosure statement by May 24, 2010; (ii) confirmation of such chapter 11 plan by July 1, 2010; and (iii) a hearing is to be held on a motion to approve sale of all assets in the Debtor's chapter 11 case by August 2, 2010.

9.      The exclusive periods under Section 1121 of the Bankruptcy Code were reinstated when the Court converted the Debtor's case to chapter 11 pursuant to section 706 of the Bankruptcy Code. In connection with the Extension Order, (i) the Debtor's exclusive period to file its chapter 11 plan was further extended to May 24, 2010, and (ii) the Debtor's exclusive period to solicit votes for such plan is July 1, 2010.

## Jurisdiction

10. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

11. Venue of this proceeding and this Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b).

12. The statutory predicates for the relief sought herein are sections 105, 361, 363, and 364 of the Bankruptcy Code, Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure.

## Potential Loan Transaction and Commitment Documents

13. Since the case was reconverted to Chapter 11 in May 2009, the Debtor continued to actively pursue all available restructuring alternatives. To that end, the Debtor, CRG Partners Group LLC (as the Debtor's financial advisor), and the Debtor's counsel have been engaged in numerous meetings, productive dialogues and/or negotiations with several potential investors, acquirers, and /or other interested parties.

14. One of such interested parties, Lower Falls Funding, LLC (the "Potential Lender"), a privately held lending group, has proposed to the Debtor a transaction involving a construction mortgage loan (the "Loan Commitment") pursuant to certain commitment letter, and related loan application (the "Commitment Documents"). In connection with the Commitment Documents, the Potential Lender will, among other things, (i) lend to the Debtor $55,000,000.00 with a five-year term, and (ii) acquire twenty percent (20%) equity interest in the Debtor. The Debtor and the Potential Lender have conducted dialogues and negotiations since late 2009.

15. In addition to the Fees and Deposit (defined and discussed below), other specific terms of the Loan Commitment include: fixed interest rate of 6.5%; a loan fee of two (2) points due and payable at the closing; and administration fee of 0.1% of each loan draw.

16. The Loan Commitment is subject to certain due diligence and will be evidenced by standard documentation. Such loan documents, including the Commitment Documents, remain subject to approval of this Court. Copies of the draft Commitment Documents have been shared with counsel to Roswell and counsel to the Creditors' Committee before filing of this Motion.[4]

### Required Fees and Deposit in Connection With Loan Commitment

17. Pursuant to the Commitment Documents, in order for the Potential Lender to proceed with the Loan Commitment, the Debtor shall pay in advance $75,000.00 representing a commitment/ application fee, and $200,000.00 as an expense deposit (the "Fees and Deposit"). The Potential Lender will use the Fees and Deposit to complete its due diligence.

18. The Fees and Deposit will be paid to the Potential Lender by the Debtor in two tranches. The first half ($137,500.00), will be delivered to the Proposed Lender after the Debtor receives this Court's approval to borrow the Advance Amount under the terms set forth herein and as set forth in the Commitment Documents. The balance of the Fees and Deposit will be delivered to the Proposed Lender within twenty (20) days after delivery of the first tranche, by which time due diligence of the Proposed Lender will be deemed completed and the Proposed

---

[4] Considering the Debtor is still negotiating with the Potential Lender and other interested parties, copies of the Commitment Documents are not attached to this Motion. Certain third parties have in the past contacted potential buyers or investors apparently to interfere with any transaction relating to the USA Springs project.

Lender shall have provided to the Debtor a final commitment and proof that the funds necessary for the funding of the loan contemplated under the Commitment Documents are available.

19. The Commitment Documents permit the Debtor to seek court approval to borrow the necessary funds to cover the Fees and Deposit.

20. Pursuant to the Commitment Documents, if the Lender chooses to terminate the commitment letter as a result of due diligence investigation or in the event the ultimate loan transaction is not approved by the Bankruptcy Court, the Proposed Lender will reimburse to Borrower the entire Fees and Deposit.

21. To induce the Third Party in lending the Advance Amount, the Debtor proposes that the Third Party receives the following protections:

> (i) The Advance Amount will incur interest at 14% per annum until paid in full
>
> (ii) In the event the Third Party advances the entire Advance Amount to the Debtor and the loan transaction related to the Loan Commitment is consummated, the Third Party will be paid $50,000.00 as a success fee; if financing or reorganization plan results from a competing offer, the success fee shall be $25,000.00.
>
> (iii) As security for the Debtor's obligations with respect to the Advance Amount (and accrued interest), the Third Party shall be granted a first-priority priming lien under section 364(d)(1) of the Bankruptcy Code on real estate assets of the Debtor and Debtor Related Entities, subject to real estate taxes (collectively, the "<u>Protections</u>").

### Relief Requested

22. The Debtor respectfully requests the entry of an order (i) authorizing the Debtor to borrow the Advance Amount from the Third Party in connection with the Loan Commitment, and (ii) granting the Protections mentioned above for the benefit of the Third Party.

23. The borrowing of the proposed Advance Amount is the result of good faith, arm's length negotiations. The Court should authorize the Debtor to borrow the Advance Amount in connection with the Loan Commitment in order to improve the Debtor's chances to emerge from this chapter 11 case while maximizing value to the various economic constituencies in this case and at the same time allow the Debtor to finish construction of its facility and move on with operation of its business.

24. The Debtor has sought the consent of Roswell with respect to the priming lien portion of the requested Protections before the filing of the Motion. The Debtor's counsel was informed that a unanimous approval of all of Roswell's numerous investors would be needed in order for Roswell to subordinate its senior secured claim to the Third Party. In the interest of time, the Debtor files this Motion without formal consent from Roswell on an emergency basis. Upon information and belief, there is a chance the Potential Lender may look at other projects if the Debtor does not respond timely and the Debtor would lose the opportunity.

### A. *The Post-Petition Lien Under Section 364 of the Bankruptcy Code Shall be Granted*

25. Roswell is the senior secured lender on substantially all assets of the Debtor and the Debtor Related Entities with a claim amount of approximately $8,559,171.00. Other creditors have recorded junior liens and mortgages on real estate assets of the Debtor and Debtor Related Entities in a total amount of approximately $2,027,580.00.[5] Such lienholders with liens and mortgages are listed on the Debtor's bankruptcy schedule D (as amended) (collectively, the "Lienholders").

---

[5] This includes claims that are listed as disputed under bankruptcy schedule D of the Debtor.

26. Section 364 of the Bankruptcy Code authorizes the granting of the post-petition lien that is part of the Protections requested herein. Section 364(d) provides in relevant part as follows:

> (d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

27. The proposed loan transaction represents the best restructuring alternative currently available to the Debtor. The Debtor has been on record for almost two years regarding the need to obtain a significant investment commitment to complete its plan of reorganization process and construction of its facility. To induce the Potential Lender to proceed with the due diligence and negotiate definitive documentation, payment of the Fees and Deposit is a prerequisite.

28. The Debtor has determined that the best way to maximize the value of the Debtor's estate, the best way to ensure a timely emergence from bankruptcy protection, and the best chance of meeting the deadline under the Stipulation (as amended by order(s) of this Court) is to pursue the potential loan pursuant to the Loan Commitment by obtaining the Advance Amount to cover the required Fees and Deposit required under the Commitment Documents.

29. The Debtor is unable to obtain credit to finance the Fees and Deposit on terms more favorable than the granting of the Protections. As a general matter, the Debtor has been unable to obtain any financing post-petition.

*30.* The Lienholders to be primed in connection with the Protections are adequately protected. They have an enormous equity cushion. As stated above, the claim amount of the Lienholders as of the Petition Date total approximately $10,586,751.00. The total unsecured claims, including insider claims, is approximately $3,000,000.00. Upon information and belief, the value of the real estate assets in question is estimated to be approximately $22,400,000 (not including water rights). Attached as <u>Exhibit A</u> is an affidavit from Mr. Joseph Degen, the appraiser who has recently conducted an appraisal of the real estate assets. Accordingly, the Debtor believes the requirements of Section 364 of the Bankruptcy Code are met for the granting of the post-petition lien related to the Protections.

**B. Sections 363(b) and 105(a) of the Bankruptcy Code Support the Approval of the Protections**

31. Section 363(b) of the Bankruptcy Code provides that the debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Also, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Where a debtor seeks authority to act under Bankruptcy Code § 363, the debtor's actions should be approved if such debtor demonstrates good faith, the exercise of sound business judgment, and a benefit to its bankruptcy estate. <u>See, e.g.</u>, <u>In re Aerovox, Inc.</u>, 269 B.R. 74, 80 (Bankr. D. Mass. 2001). <u>See also</u> <u>Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)</u>, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), court will generally not entertain objections to debtor's

conduct."); In re Logical Software, Inc., 66 B.R. 683, 686 (Bankr. D. Mass. 1986) (a debtor's business decision should be accepted by the bankruptcy court unless it is shown to be "so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.").

33. The Debtor has demonstrated its good faith and sound business judgment with respect to the payment of annual interest rate of 14% and the success fee as an incentive for the Third Party to make available the Advance Amount as such funds are necessary to pay the Fees and Deposit. As mentioned above, if the Lender chooses to terminate the commitment letter as a result of due diligence investigation, the Proposed Lender will reimburse to Borrower the Fees and Deposit. Also, in the event the proposed loan transaction is not approved by the Bankruptcy Court, the Proposed Lender has agreed to return the entire Fees and Deposit. While this minimizes the risk that the Debtor will not have the necessary funds to pay back the Advance Amount if the loan transaction contemplated under the Commitment Documents does not close, the Debtor is asking the Third Party to invest the Advance Amount for the benefit of the Debtor and its estate despite the inherent risks and uncertainties of the chapter 11 process and the proposed loan transaction.

## Notice

34. The Debtor will serve notice of this Motion on (a) the United States Trustee, (b) counsel to Roswell, (c) all known secured creditors of the Debtor, (d) counsel for the Creditors' Committee, (e) the Debtor's top 20 unsecured creditors, (f) parties that have requested notice of all pleadings, and (g) the proposed Third Party. In light of the nature of the relief requested, the Debtor submits that no further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto granting the Motion and such other relief as may be just and proper.

Dated: April 15, 2010

Respectfully submitted,

USA SPRINGS, INC.
By its attorneys

/s/ Alan Braunstein
Alan L. Braunstein (BNH 01544)
Macken Toussaint (BNH 06943)
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
abraunstein@riemerlaw.com
mtoussaint@riemerlaw.com

- and -

/s/ Bruce A. Harwood
Bruce A. Harwood (BNH 01519)
Sheehan Phinney Bass + Green, P.A.
1000 Elm Street
P.O. Box 3701
Manchester, NH 03105-3701
(603) 627-8139
bharwood@sheehan.com

# EXHIBIT A
(Affidavit of Appraiser)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re:

USA SPRINGS, INC.,

Debtor.

Case No. 08-11816 (JMD)

Chapter 11

## AFFIDAVIT OF APPRAISER REGARDING VALUE OF REAL ESTATE PROPERTIES

I, <u>Joseph Degen</u>, being duly sworn, depose and state as follows:

1.  I am a licensed Real Estate appraiser in New Hampshire and Massachusetts, and I am the <u>Owner</u> of <u>Real Property Services</u> located at P.O. Box 547, North Andover, MA 01845 tele: <u>978-683-0355</u>.

2.  Since becoming a Real Estate Appraiser in 1980, I have done over <u>200</u> appraisal opinions per year. I am a member of the New Hampshire Real Estate Board of Appraisers, and hold a Certified General Appraisal License.

3.  I submit this declaration in support of the Debtor's Motion for Order (A) Authorizing the Debtor to Borrow Funds from Third Party in Connection with Certain Loan Commitment, and (B) Granting Certain Protections to Such Third Party.

4.  I have recently completed a comparative market analyses with respect to appraised value of several properties on behalf of USA Springs, Inc., including (i) certain tracts or parcels of land, title of which Parcel 10: is held by Garrison Place Realty Trust, situated in Nottingham, County of Rockingham, State of New Hampshire and in Barrington, County of Strafford, State of New Hampshire, at 145 Old Turnpike Road; (ii) certain tract or parcel of land, title of which Parcel 9: is held by Just Cause Realty Trust, situated in the Town of Nottingham,

County of Rockingham and State if New Hampshire, at 155 Old Turnpike Road; and (iii) certain tract of land with the building thereon, title of which Parcel 6: is held by Sweet Review Realty Trust, situated in the Town of Nottingham, County of Rockingham and State of New Hampshire, at 165 Old Turnpike Road (collective, the "Properties").

5. It is my opinion that the **Market Value** of the Properties is no less than $22,400,000. The value per parcel based on the tax map is: **Parcel 6:** $400,000, **Parcel 9:** $622,000 and **Parcel 10:** $21,378,000

6. My estimates of value for the Properties are based upon my general understanding of the value of property in the southern region of New Hampshire and the following comparative market analyses that I have done or reviewed:

   a. I conducted a comparative market analysis as of March 23, 2010 in respect of the Properties. In addition, a Cost analysis and Income analysis was completed to support the conclusion

I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on April 14, 2010.

*[signature]*

_____

Joseph Degen- NHCG-269

1213111.2

2