UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| USA SPRINGS, INC. , | ) Case No. 08-11816 (JMD) |
| | ) |
| Debtor. | ) |
| | ) |

## PLAN OF USA SPRINGS, INC. AND RELATED ENTITES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**Dated:**     **May 24, 2010**

| Affected Entities: |
|---|
| USA Springs, Inc., a Delaware corporation (the "Debtor") |
| USA Springs, Inc., a New Hampshire corporation |
| Garrison Place Real Estate Investment Trust |
| Just Cause Realty Trust |
| Sweet Review Realty Trust |
| Amici Real Estate  Trust |

Alan L. Braunstein, Esq.
Macken Toussaint, Esq.
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA  02108
(617) 523-9000
abraunstein@riemerlaw.com
mtoussaint@riemerlaw.com

Bruce A. Harwood, Esq.
Sheehan Phinney Bass + Green P.C.
1000 Elm Street
P.O. Box 3701
Manchester, NH  03105-3701
(603) 627-8139
bharwood@sheehan.com

COUNSEL TO THE DEBTOR

# TABLE OF CONTENTS

**Page**

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ..................................................................................... 4
    A.    Rules of Interpretation, Computation of Time and Governing Law ............................ 4
    B.    Defined Terms ............................................................................................................ 5

ARTICLE II. UNCLASSIFIED CLAIMS AND TREATMENT .................................................. 12
    A.    Administrative Expense Claims ................................................................................ 12
    B.    Priority Tax Claims ................................................................................................... 13

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............................................................................................................... 14
    A.    Summary .................................................................................................................... 14
    B.    Classification and Treatment of Claims and Interests .............................................. 14
    C.    Intercompany Claims ................................................................................................ 17
    D.    Special Provisions Regarding Subordinated Claims ................................................ 17
    E.    Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims ....................................................................................................................................... 17
    F.    Special Provisions Insider Claims ............................................................................ 17

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ............................................. 17
    A.    Each Impaired Class Entitled to Vote ...................................................................... 17
    B.    Acceptance by Impaired Classes .............................................................................. 17
    C.    Classes Entitled to Vote ............................................................................................ 18
    D.    Non-Consensual Confirmation ................................................................................. 18

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ........................................... 18
    A.    Proposed Transaction ................................................................................................ 18
    B.    Substantive Consolidation ....................................................................................... 19
    C.    Corporate Existence and Vesting of Assets in Reorganized Debtor ......................... 19
    D.    Issuance of New Common Stock and Transmission of Instruments ......................... 19
    E.    Cancellation and Surrender of Existing Securities and Agreements ........................ 19
    F.    Preservation of Rights of Action; Settlement of Causes of Action .......................... 19
    G.    Certificate of Incorporation and By-Laws ................................................................ 20
    H.    Directors and Officers .............................................................................................. 20
    I.    Release of Liens ........................................................................................................ 20
    J.    Exemption from Certain Transfer Taxes .................................................................. 20
    K.    Implementation; Effectuating Documents; Further Transactions .............................. 20

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .. 21
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .............. 21
    B.    Payments Related to Assumption of Contracts and Leases ...................................... 21
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ................ 22

      D.     Contracts Entered Into After the Petition Date ............................................................ 22

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS............................................ 22
      A.     Distributions for Claims Allowed as of the Effective Date ....................................... 22
      B.     Interest on Claims .................................................................................................... 22
      C.     Place of Delivery of Distributions ........................................................................... 22
      D.     Undeliverable Distributions ...................................................................................... 23
      E.     Compliance with Tax Requirements ......................................................................... 23
      F.     Setoffs ...................................................................................................................... 23

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................... 24
      A.     Resolution of Disputed Claims ................................................................................. 24
      B.     Claims Allowance .................................................................................................... 24
      C.     Payments and Distributions on Disputed Claims...................................................... 24
      D.     Voting Rights of Holders of Disputed Claims .......................................................... 24

ARTICLE IX. SUBSTANTIVE CONSOLIDATION ................................................................ 25
      A.     Consolidation of the Related Entities With the Debtor's Estate................................ 25
      B.     Substantive Consolidation Order .............................................................................. 25
      C.     Reservation of Rights................................................................................................ 25

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
      THE PLAN ....................................................................................................................... 26
      A.     Conditions Precedent to Confirmation....................................................................... 26
      B.     Conditions Precedent to Consummation.................................................................... 26
      C.     Waiver of Conditions ............................................................................................... 27

ARTICLE XI. RETENTION OF JURISDICTION.................................................................... 27

ARTICLE XII. EFFECT OF CONFIRMATION ....................................................................... 29
      A.     Binding Effect .......................................................................................................... 29
      B.     Discharge of Plan Parties ......................................................................................... 29
      C.     Injunction ................................................................................................................. 30
      D.     Releases.................................................................................................................... 30
      E.     Exculpation .............................................................................................................. 31

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................................ 31
      A.     Payment of Statutory Fees ....................................................................................... 31
      B.     Severability of Plan Provisions ................................................................................ 31
      C.     Successors and Assigns............................................................................................. 31
      D.     Waiver of Enforcement of Subordination ................................................................. 31
      E.     Modification and Amendment of Plan Documents .................................................... 32
      F.     Dissolution of Committee ......................................................................................... 32
      G.     Revocation, Withdrawal, or Non-Consummation ..................................................... 32
      H.     Exemption From Registration; Section 1145 of the Bankruptcy Code ..................... 33
      I.     Notices ..................................................................................................................... 33
      J.     Term of Injunctions or Stays..................................................................................... 33

## PLAN OF USA SPRINGS, INC. AND RELATED ENTITIES
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., USA Springs, Inc., a Delaware corporation, the Debtor, and the Related Entities (as defined herein) hereby respectfully propose the following Chapter 11 plan:

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

*A.*      *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) the terms of the Plan are not intended to alter the terms of the Transaction Documents in any way and in the event of any inconsistency between the terms of the Plan and the Transaction Documents, the terms of the Transaction Documents shall control.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New Hampshire, without giving effect to the principles of conflict of laws thereof.

*B.*     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     "*Administrative Expense Claim*" means (a) any cost and expense of administration of the Chapter 11 Case or related to the preservation of the Estate and the USA Springs Project (including, without limitation Fee Claims of Professionals) asserted or arising under sections 503(b) or 507(b) of the Bankruptcy Code, (b) a Claim given the status of an Administrative Expense Claim by Final Order of the Bankruptcy Court, and (c) all fees or charges assessed against the Estate under Title 28 United States Code, section 1930.

2.     "*Affiliate*" has the meaning set forth at section 101(2) of the Bankruptcy Code.

3.     "*Allowed*" means, with respect to a Claim or any portion thereof, a Claim:  (a) that has been scheduled by the Debtor in its Schedules as neither disputed, contingent nor unliquidated and for which the amount has not been identified as unknown, and a proof of Claim for a different amount has not been filed and as to which no objection has been filed by the Claims Objection Bar Date; (b) that either is not a Disputed Claim or has been allowed by a Final Order; (c) that is allowed:  (i) pursuant to this Plan; (ii) in any stipulation of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court; (iii) in any stipulation with the Debtor of amount and nature of Claim executed on or after the Confirmation Date and approved by the Bankruptcy Court; or (iv) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) relating to a rejected Executory Contract or unexpired lease that has been allowed by a Final Order after a proof of Claim has been filed by the applicable bar date; (e) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court and as to which no objection to its allowance has been filed by the Claims Objection Bar Date; or (f) is allowed pursuant to the terms hereof.

4.     "*Alternative Transaction*" means, in the event the Loan Transaction is not consummated, any other transaction negotiated between the Debtor and a plan funder and for which the Debtor has received written commitment documents.

5.     "*Amici Trust*" means Amici Real Estate Trust.

6.     "*Ballots*" mean the ballots that will accompany the approved Disclosure Statement upon which Holders of Claims or Interests entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Plan and certain voting instructions, and which must be received by the Debtor on or before a specific voting deadline.

7.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. et seq., as now in effect or hereafter amended and applicable to the Chapter 11 Case.

8.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Hampshire, having jurisdiction over the Chapter 11 Case.

9. *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure, and the local rules of the Bankruptcy Court as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

10. *"Bar Date"* means (i) September 1, 2009 with respect to claims of the Debtor's Creditors, (ii) as subsequently ordered by the Bankruptcy Court with respect to separate Creditors of the Related Entities, if any, and any other Claims not addressed pursuant to prior bar date orders or this Plan, and (iii) as set forth in this Plan for Administrative Expense Claims.

11. *"Breach of Contract Claims"* mean claims related to breach of prepetition construction contracts or agreements filed by (i) Diom LLC in the approximate amount of $1,106,250, and (ii) Aho Construction, Inc. in the approximate amount of $6,852,650.

12. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

13. *"Cash"* means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

14. *"Causes of Action"* means all actions, causes of action, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date, including the Chapter 5 Claims and any potential claims against third parties for interference with the USA Springs Project.

15. *"Certificate of Incorporation"* means, collectively, (i) the certificate of incorporation of Reorganized Debtor, and (ii) the by-laws of Reorganized Debtor, copies of which are to be filed in the Plan Supplement.

16. *"Chapter 5 Claims"* means any and all avoidance, recovery or other actions or remedies that may be brought under Chapter 5 of the Bankruptcy Code against certain parties who have received payments in connection with the closing of the Prepetition Credit Agreement.

17. *"Chapter 11 Case"* means the chapter 11 case of the Debtor under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

18. *"Claim"* means a "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Plan Parties, whether or not asserted.

19. *"Claims Objection Bar Date"* means, for each Claim, the later of (a) 180 days after the Effective Date, or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

20.  *"Class"* means a class or category of Holders of Claims or Interests as set forth in Article III pursuant to sections 1122 and 1123(a) of the Bankruptcy Code.

21.  *"Committee"* means the official committee of unsecured creditors of the Debtor appointed by the United States Trustee in the Chapter 11 Case on July 15, 2008, pursuant to section 1102 of the Bankruptcy Code, comprised of the Committee Members and as reconstituted or changed on June 24, 2009 and from time to time.

22.  *"Committee Members"* means the members of the Committee, namely:  (i) W.C. Cammett Engineering, Inc., (ii) DIOM, LLC (Dynamic Industrial Operations Management), (iii) NHSC, Inc. (n/k/a Morse & Long, Inc.), and (iv) Mykrowaters, Inc., and any predecessors of such entities.

23.  *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

24.  *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

25.  *"Confirmation Hearing"* means the hearing to consider the Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time; *provided that* the Debtor reserves its right to combine the Confirmation Hearing with the hearing on the Disclosure Statement.

26.  *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and in compliance with LBR 3020-1(c).

27.  *"Consummation"* means the occurrence of the Effective Date.

28.  *"Creditor"* means any Holder of a Claim.

29.  *"Creditors Escrow Account"* means a segregated account to be established on the Effective Date by the Reorganized Debtor and to be held by counsel to the Debtor containing the Creditors Account Assets.

30.  *"Creditors Account Assets"* means an amount representing an estimate of all Allowed Claims funded by Reorganized Debtor to be deposited in the Creditors Escrow Account for the benefit of Allowed Claims (other than Fee Claims).

31.  *"Cure"* means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, or such other amount as may be agreed upon by the parties, under such Executory Contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

32.  *"Debtor"* means USA Springs, Inc., a Delaware corporation.

33.     "*Debtor Related Entities*" mean N.H. Corp, Garrison Trust, Just Cause Trust, and Sweet Review Trust.

34.     "*Disclosure Statement*" means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and referenced therein.

35.     "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement in compliance with LBR 3017-1.

36.     "*Disputed Claim*" means (a) any Claim against a Plan Party, or a portion thereof, that is not an Allowed Claim, (b) a Claim related to rejected Executory Contracts or unexpired leases, (c) a Breach of Contract Claim, or (d) the Subordinated Claims.

37.     "*Effective Date*" means the date which is fifteen (15) days after the Confirmation Date, or, if that date is not a Business Day, the next succeeding Business Day; *provided, however*, that if, on or prior to such date, all conditions to the Effective Date set forth in Article X.B have not been satisfied, or waived, the Effective Date shall be the first Business Day following the day on which all such conditions have been satisfied or waived.

38.     "*Escrow Accounts*" mean the Creditors Escrow Account and the Retained Professional Escrow Account.

39.     "*Estate*" means, the estate of the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

40.     "*Exculpated Parties*" mean:  (a) the Plan Parties; (b) the Reorganized Debtor; and (c) the Releasees.

41.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

42.     "*Fee Claim*" means a Claim under sections 328, 329, 330, or 331 of the Bankruptcy Code for the compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Case prior to and including the Effective Date, including fees of the chapter 7 interim trustee and his counsel.

43.     "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing will have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

44.     "*First Lien Secured Claim*" means the Secured Claim of Roswell against the Debtor and the Debtor Related Entities in connection with the Pre-Petition Credit Agreement, subject to the carve-out under the Stipulation, as applicable.

45.     "*Garrison Trust*" Garrison Place Real Estate Investment Trust, created by a declaration of trust dated as of April 23, 1998.

46.     "*General Unsecured Claim*" means any Claim against any Plan Party that is not a/an (a) Administrative Expense Claim, (b) Secured Claim, (c) Priority Tax Claim, (d) Other Priority Claim, (e) a Claim asserted on account of an Interest, (f) Intercompany Claim, or (g) Subordinated Claim.

47.     "*Holder*" means a Person holding an Interest or Claim.

48.     "*Impaired*" means, with respect to any Class of Claims or Interests, any Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

49.     "*Intercompany Claims*" means any and all Claims and Interests of a Plan Party against and in another Plan Party.

50.     "*Insider*" means (1) any officer, director or substantial shareholder, trustee or beneficiary past or present of the Debtor and/or the Related Entities, and any familial relation to such persons; or (2) an insider as prescribed in Section 101(31) of the Code.

51.     "*Interest*" means the legal, equitable, contractual, and other rights of any Holder of any share of common stock, preferred stock, beneficial interest or other instrument evidencing a current ownership interest in any of the Plan Parties, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for, or otherwise acquire or receive any such Interest in a Plan Party.

52.     "*Jurisdiction Agreements*" mean (i) the Jurisdiction Agreement, dated as of May 27, 2009, among the Debtor and the Debtor Related Entities, and (ii) the Jurisdiction Agreement, dated as of May 27, 2009 between the Debtor and the Amici Trust.

53.     "*Just Cause Trust*" means Just Cause Realty Trust, created by a declaration of trust dated as of June 2, 2003.

54.     "*Lender*" means Lower Falls Funding, LLC.

55.     "*Liquidating Plan*" means, in the event the commitment related to the Loan Transaction is terminated or expired and no Alternative Transaction is available to the Debtor, a Chapter 11 plan contemplating the sale of all or substantially all assets of the Plan Parties at an auction or otherwise, which may be a joint Chapter 11 plan with the Debtor, the other Plan Parties, and the Committee.

56.     "*Loan Transaction*" means that certain loan transaction involving a construction mortgage loan as set forth in the Transaction Documents.

57. *"New Common Stock"* means the shares of new common stock of Reorganized Debtor authorized pursuant to the Certificate of Incorporation and issued pursuant to this Plan and the Transaction Documents as also described and referenced in Article III.B of this Plan.

58. *"N.H. Corp"* means USA Springs, Inc., a New Hampshire corporation

59. *"Other Priority Claim"* means any and all Claims accorded priority in right of payment under sections 507(a) and 1129(a)(9) (A) and (B) of the Bankruptcy Code, other than a Priority Tax Claim, or an Administrative Expense Claim.

60. *"Other Secured Claim"* means any and all other Secured Claims against the Plan Parties not including the First Lien Secured Claim.

61. *"Person"* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit, agency, or political subdivision thereof, or other entity.

62. *"Petition Date"* means June 27, 2008, the date on which the Debtor commenced the Chapter 11 Case.

63. *"Plan"* means this plan under chapter 11 of the Bankruptcy Code, either in present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, as the case may be, together with the Plan Supplement, which is incorporated herein by reference.

64. *"Plan Objection Deadline"* means the deadline by which Creditors or parties in interest shall have to object to Confirmation of the Plan, as set forth in the Disclosure Statement Order or any separate notice.

65. *"Plan Parties"* means the Debtor and the Related Entities.

66. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules and exhibits to be filed at least five (5) Business Days prior to the commencement of the Confirmation Hearing as such documents may thereafter be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules, comprising, without limitation, the following documents: (a) the then-current Transaction Documents, including schedules thereto; (b) Certificate of Incorporation, (c) a list of Executory Contracts or unexpired leases to be rejected, if any; and (d) a liquidation analysis, if applicable.

67. *"Prepetition Credit Agreement"* means that certain Commercial Loan Agreement and Construction Loan Agreement, both dated as of March 26, 2007, among Roswell and the Debtor Related Entities, and related transaction and guaranty documents (as amended, supplemented or otherwise modified).

68. *"Priority Tax Claim"* means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

69.    "*Professional*" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any professionals seeking compensation or reimbursement of expenses in connection the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

70.    "*Related Entities*" mean the Debtor Related Entities and Amici Trust.

71.    "*Releasees*" mean, collectively, (a) all current and former officers, directors, employees, trustees and beneficiaries of the Plan Parties, the Reorganized Debtor and their subsidiaries, as applicable, and (b) all attorneys, financial advisors, accountants, professionals, agents, Affiliates and representatives of the Plan Parties, the Reorganized Debtor and their subsidiaries, as applicable.

72.    "*Remaining Shares*" mean the balance of the New Common Stock after issuance of the required New Common Stock in connection with the Transaction Documents.

73.    "*Reorganized Debtor*" means USA Springs, Inc., a Delaware corporation, as reorganized, or its successor, on and after the Effective Date.

74.    "*Retained Professionals Escrow Account*" means a segregated account funded by Reorganized Debtor to be held by counsel to the Debtor, commencing on the Effective Date, in the amount of the accrued Fee Claims solely for the purpose of paying such Fee Claims; *provided that* the Roswell Carveout shall be added to this account.

75.    "*Roswell*" means Roswell Commercial Mortgage, LLC, and all permitted assigns, transferees and successors in interest thereto.

76.    "*Roswell Carveout*" means the carveout provided in the Stipulation for the benefit of the counsel to the Debtor and the Committee.

77.    "*Schedules*" mean the schedules of assets and liabilities, and the statements of financial affairs filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended, modified or supplemented from time to time.

78.    "*Secondary Liability Claim*" means a Claim that arises from a Plan Party being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort or other obligation of another Plan Party, including any Claim based on: (a) guaranties of collection, payment or performance; (b) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements or other similar obligations made or given by a Plan Party relating to the obligations or performance of another Plan Party; (c) vicarious liability; (d) liabilities arising out of piercing the corporate veil, alter ego liability or similar legal theories; or (e) any other joint or several liability that any Plan Party may have in respect of any obligation that is the basis of a Claim.

79.    "*Secured Claims*" means Claims that are secured by a lien on property in which the Estate or the Plan Parties have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the applicable Plan Party's

interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

80. *"Stipulation"* means certain Stipulation on Motion to Reconsider Order Granting Motion to Convert Case, dated as of April 27, 2009, between the Debtor, the Debtor Related Entities, and Roswell, as amended, supplemented and in effect from time to time.

81. *"Subordinated Claims"* mean (i) Claims of the type described in, and subject to subordination under, section 510 of the Bankruptcy Code; and (ii) any Claim against any of the Plan Parties whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such fees are punitive in nature) or for multiple, exemplary or punitive damages.

82. *"Substantive Consolidation Order"* means that order of the Bankruptcy Court approving the substantive consolidation of the Plan Parties and their assets which order may be included in the Confirmation Order.

83. *"Sweet Review Trust"* means Sweet Review Realty Trust, created by a declaration of trust dated as of April 2006.

84. *"Transaction Documents"* mean that certain loan agreement to be entered into between, among others, the Debtor and the Lender and other related agreements and documents, including that certain commitment letter and related loan application, both dated as of April 14, 2010, between the Debtor and the Lender, as amended, supplemented and in effect from time to time.

85. *"Unimpaired"* means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

86. *"USA Springs Project"* means the development of a commercial water bottling production facility by the Debtor and its business group.

## ARTICLE II.

## UNCLASSIFIED CLAIMS AND TREATMENT

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as unclassified Claims. As referenced in Article V, this Plan contemplates the closing of the Loan Transaction. In the event the Loan Transaction is not consummated and the Plan is amended to incorporate an Alternative Transaction or a Liquidating Plan, the treatment of such Administrative Expense Claims, Fee Claims, and Priority Tax Claims may change.

A. *Administrative Expense Claims*

1. <u>Payment of Administrative Expense Claims</u>. Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Claim in Cash (a) on or as soon as practicable

after the Effective Date; (b) or if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; or (c) upon such other terms as may be agreed upon by such Holder and the Debtor. Notwithstanding the foregoing, the Holder of an Allowed Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by such Holder and the Debtor. Each Holder of an Allowed Fee Claim who is a Professional retained by the Debtor shall be paid from the Retained Professional Escrow Account. Other Allowed Claims (other than with respect to Professionals retained by the Debtor) shall be paid from the Creditors Escrow Account.

2. <u>Filing and Allowance of Fee Claims</u>. Each Professional who holds or asserts a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive notice a fee application within sixty (60) days after the Confirmation Date or such earlier date as may be set forth in the Disclosure Statement Order. The failure to file and serve the fee application timely and properly shall result in the Fee Claim being forever barred and discharged unless otherwise ordered by the Court. A Fee Claim, with respect to which a fee application has been properly filed and served, shall become an Allowed Fee Claim to the extent allowed by Final Order of the Bankruptcy Court.

3. <u>Filing and Allowance of Other Administrative Expense Claims.</u> The Holder of an Administrative Expense Claim must file with the Bankruptcy Court and serve on the Debtor and its counsel, notice of such Administrative Expense Claim within sixty (60) days after entry of the Confirmation Date or such earlier date as may be set forth in the Disclosure Statement Order. Such notice of Administrative Expense Claims must include, at a minimum, (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to file and serve this notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged. An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed within forty-five (45) days of the filing and service of notice of such Administrative Expense Claim. If an objection is filed within such forty-five (45) day period, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order of the Bankruptcy Court.

*B.    Priority Tax Claims*

On the later of the Effective Date or the date within five Business Days after the date a Priority Tax Claim becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, such Holder of an Allowed Priority Tax Claim will receive on account of such Claim Cash in an amount equal to the amount of such Allowed Priority Tax Claim, which amount shall be payable out of the Creditors Escrow Account; *provided, however*, any payment on account of any pre-Effective Date interest, fees and/or other charges, as applicable, shall be as agreed upon between the Debtor and the Holder of the Priority Tax Claims or as determined by the Bankruptcy Court if no such agreement is reached. Notwithstanding the foregoing, the Holder of an Allowed Priority Tax Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

This Plan is premised on the substantive consolidation of the Plan Parties and their assets with respect to treatment of all Classes of Claims and Interests. All Claims and Interests, except Administrative Expense Claims, Fee Claims, and Priority Tax Claims are placed in the following Classes and afforded the following treatment.

*A.*     *Summary*

In connection with the closing of the contemplated Loan Transaction, below is a summary of classification and treatment of classified Claims and Interests. In the event the Loan Transaction is not consummated and the Plan is amended to incorporate an Alternative Transaction or a Liquidating Plan, the classification and treatment of such Claims and Interest may change.

| Class | Claim | Status | Voting Rights |
|-------|-------|--------|---------------|
| 1 | Other Priority Claims | Impaired | Entitled to Vote |
| 2 | First Lien Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Interests | Impaired | Entitled to Vote |

*B.*     *Classification and Treatment of Claims and Interests*

1.     Class 1- Other Priority Claims

    (a)     *Classification*: Class 1 consists of the Other Priority Claims against the Plan Parties.

    (b)     *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date within five Business Days after the date such Other Priority Claim becomes an Allowed Other Priority Claim, or (c) the date such Other Priority Claim becomes payable pursuant to any agreement between the Debtor and the Holder of such Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim from the Creditors Escrow Account Cash equal to the unpaid portion of such Allowed Other Priority Claim; *provided, however*, no Holder of an Allowed Other Priority Claim shall be entitled to any payments on account of any pre-Effective Date interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date with respect to or in connection with such Allowed Other Priority Claim. Notwithstanding the foregoing, the Holder of an Allowed Other Priority

Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 1 is an Impaired Class, and the Holders of Other Priority Claim are entitled to vote on the Plan.

2. Class 2- First Lien Secured Claim

(a) *Classification*: Class 2 consists of the First Lien Secured Claim against the Debtor and the Debtor Related Entities.

(b) *Treatment*: On, or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed First Lien Secured Claim shall receive, in full and final satisfaction of such Allowed First Lien Secured Claim, from the Creditors Escrow Account Cash equal to such Allowed First Lien Secured Claim; *provided, however*, any payment on account of any pre-Effective Date interest, fees and/or or other charges, as applicable, shall be as agreed upon between the Debtor and the Holder of the First Lien Secured Claim or as determined by the Bankruptcy Court if no such agreement is reached; and *provided further*, (i) in the event of an Alternative Transaction or a Liquidating Plan, the Holder of Allowed First Lien Secured Claim shall recover only with respect to assets of the Debtor and Debtor Related Entities, not assets owned by Amici Trust; and (ii) payment to the First Lien Secured Claim shall be after deduction of the Roswell Carveout which amount may be added as a General Unsecured Claim as provided for in the Stipulation. Notwithstanding the foregoing, the Holder of the Allowed First Lien Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor

(c) *Voting*: Class 2 is an Impaired Class, and the Holder of First Lien Secured Claim is entitled to vote on the Plan.

3. Class 3- Other Secured Claims

(a) *Classification*: Class 3 consists of the Holders of Other Secured Claims against the Plan Parties.

(b) *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date within five Business Days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (c) the date such Other Secured Claim becomes payable pursuant to any agreement between the Debtor and the Holder of such Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Allowed Other Secured Claim, from the Creditors Escrow Account Cash equal to such Allowed Other Secured Claim; *provided, however*, no Holder of an Allowed Other Secured Claim shall be entitled to any payments on account of any pre-Effective Date accrued interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date

with respect to or in connection with such Allowed Other Secured Claim. Notwithstanding the foregoing, the Holder of an Allowed Other Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c)    *Voting*:    Class 3 is an Impaired Class and the Holders of Other Secured Claims are entitled to vote on the Plan.

4.    Class 4— General Unsecured Claims

(a)    *Classification*:  Class 4 consists of the Holders of General Unsecured Claims against the Plan Parties.

(b)    *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, (b) the date within five Business Days after the date such General Unsecured Claim becomes an Allowed General Unsecured Claim, or (c) the date such General Unsecured Claim becomes payable pursuant to any agreement between the Debtor and the Holder of such General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Allowed General Unsecured Claim, from the Creditors Escrow Account Cash equal to such Allowed General Unsecured Claim; *provided, however*, no Holder of an Allowed General Unsecured Claim shall be entitled to any payments on account of any other amount with respect to or in connection with such Allowed General Unsecured Claim. Notwithstanding the foregoing, the Holder of an Allowed General Unsecured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c)    *Voting*:  Class 4 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote on the Plan.

5.    Class 5- Interests

(a)    *Classification*:  Class 5 consists of all Interests in the Plan Parties.

(b)    *Treatment*:    On the Effective Date, all Class 5 Interests shall be deemed canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise. On, or as soon as reasonably practicable after the Effective Date, each Holder of an allowed Interest shall receive a pro rata share of the Remaining Shares. The terms and provisions of the New Common Stock, and the rights of the holders thereof, shall be described, in and otherwise governed by the Certificate of Incorporation and any investors rights agreement or similar agreement.

(c)    *Voting*:  Class 5 is an Impaired Class and the Holders of Interests are entitled to vote on the Plan.

C.  *Intercompany Claims*

All Intercompany Claims, if any, will be cancelled as of the Effective Date, and Holders thereof will not receive a distribution under the Plan in respect of such Claims.

Pursuant to the Jurisdiction Agreements and the Stipulation, the Plan incorporates the substantive consolidation of the Plan Parties and their assets. Pursuant to the Plan, and in consideration for the distribution and other benefits under the Plan, upon the Effective Date, all Intercompany Claims shall be extinguished. All parties who have held, hold or may hold Claims or Interests in any or all of the Plan Parties are permanently enjoined from asserting or continuing in any manner any action related to the enforcement of the Intercompany Claims.

D.  *Special Provisions Regarding Subordinated Claims*

All Subordinated Claims shall be deemed Disputed Claims and to the extent Allowed by the Bankruptcy Court shall be subordinated to payment in full of all other Allowed Claims.

E.  *Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims*

The classification and treatment of Allowed Claims under the Plan take into consideration all Allowed Secondary Liability Claims. On the Effective Date, Holders of Allowed Secondary Liability Claims will be entitled to only one distribution in respect of such underlying Allowed Claim from the substantively consolidated Plan Parties. No multiple recovery on account of any Allowed Secondary Liability Claim will be provided or permitted.

F.  *Special Provisions Insider Claims*

All payments related to Insider Claims shall be subordinated to and deferred until payment in full of all Allowed Claims of non-Insiders. The Holder of an Allowed Insider Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor, including shares of New Common Stock.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.  *Each Impaired Class Entitled to Vote*

Each Impaired Class that is to receive a distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each such Impaired Class shall receive a Ballot which will be used to cast its vote in respect to the Plan.

B.  *Acceptance by Impaired Classes*

A Class of Impaired Claims shall have accepted the Plan if the Plan is accepted by Holders of Claims that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims of such Class that have voted to accept or reject the Plan (not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code).

*C.*     *Classes Entitled to Vote*

Classes 1 to 5 are Impaired Classes under the Plan and are entitled to vote to accept or reject the Plan.

*D.*     *Non-Consensual Confirmation*

The Debtor reserves the right to seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable (including with respect to any amended Plan contemplating an Alternative Transaction or a Liquidating Plan). The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.*     *Proposed Transaction*

On the Effective Date, the Plan Parties expect to consummate the Loan Transaction. The Debtor expects to receive a final commitment from the Lender after the due diligence period expires on or about June 7, 2010. Assuming the Lender submits such final commitment to the Debtor, the loan closing is expected to take place approximately 45 to 60 days thereafter.

Subject to the due diligence referred to above, the Lender is committed to fund the USA Springs Project with a $55,000,000 loan to be collateralized by all or substantially all assets of the Plan Parties. A summary of the commitment terms related to the Loan Transaction is set forth in the Disclosure Statement. Entry of the Confirmation Order will constitute the approval, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, effective as of the Effective Date, of the Loan Transaction. On the Effective Date, the Reorganized Debtor will establish (i) a Retained Professionals Escrow Account with respect to Fee Claims, and (ii) a Creditors Escrow Account for payment of all other Allowed Claims; *provided that* in the event the initial funds deposited in the Escrow Accounts are not sufficient to pay all Allowed Claims, the Reorganized Debtor shall supplement the Escrow Account to pay such Allowed Claims. Any balance or unused amount in the Escrow Accounts after payment in full of the applicable Allowed Claims shall be property of the Reorganized Debtor.

The net proceeds from the Loan Transaction (after applicable loan and closing fees) shall be used to complete the construction of the USA Springs Project and to fund the business operations.

In the event the Loan Transaction is not consummated, the Debtor may have the benefit of certain Alternative Transaction(s) and the Plan will be amended or modified to incorporate such Alternative Transaction. The Debtor also reserves its right to amend the Plan as to a Liquidating Plan, if necessary in the event the Loan Transaction is not consummated and no Alternative Transaction remains viable.

*B.      Substantive Consolidation*

The Plan is predicated on the substantive consolidation of the Plan Parties and their assets as set forth more fully in Article X.

*C.      Corporate Existence and Vesting of Assets in Reorganized Debtor*

The Reorganized Debtor will exist after the Effective Date as a corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.  Except as otherwise provided in this Plan, as of the Effective Date, all property of the Estate and of the Plan Parties, including title to real estate assets, by transfer or otherwise, will vest in Reorganized Debtor free and clear of Claims, Interests and liens and security interests of any sort.  On and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order.   Without limiting the foregoing, Reorganized Debtor may pay the charges that it incurs after the Effective Date for professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

*D.      Issuance of New Common Stock and Transmission of Instruments*

On the Effective Date, Reorganized Debtor shall be authorized to (a) issue the New Common Stock in accordance with the provisions of this Plan without further act or action under applicable law, regulation, order, or rule; (b) execute, as appropriate, and distribute to each holder of New Common Stock a copy of the Certificate of Incorporation, any investors rights agreement or similar agreement; and (c) file with applicable governmental authorities any necessary transaction document.

*E.      Cancellation and Surrender of Existing Securities and Agreements*

On the Effective Date, except as otherwise provided for herein, all exiting notes, stock certificates, instruments, and any other documents or certificates evidencing Interests in any Plan Party or related indebtedness or obligation of a Plan Party shall be cancelled and the obligations of the Plan Parties thereunder or in any way related thereto shall be discharged.

*F.      Preservation of Rights of Action; Settlement of Causes of Action*

Except as otherwise provided in this Plan, the Confirmation Order, or any previous order of this Court, the Reorganized Debtor shall, under 1123(b) of the Code retain and have the exclusive right, in its sole discretion, to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits, and proceedings, whether in law or equity, whether known or unknown, that the Plan Parties may hold against any Person. Reorganized Debtor or its successor(s) may pursue such retained claims, rights, Causes of Action, suits, or proceedings as appropriate, in accordance with the best interests of Reorganized Debtor or its successor(s); *provided that*, the Committee, at its sole discretion, may enforce, sue on, settle, or compromise all

claims, rights, suits and proceedings related to the Chapter 5 Claims until the Allowed Claims of the non-insider unsecured creditors receive 100% of such claim amount.

## G. Certificate of Incorporation and By-Laws

The Certificate of Incorporation shall expressly authorize the issuance of the New Common Stock contemplated herein. On the Effective Date, the by-laws of Reorganized Debtor shall be deemed to be fully effective. Such new Certificate of Incorporation shall be in accordance with the Transaction Documents and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities by Reorganized Debtor for a period of one year following the Effective Date.

## H. Directors and Officers

On the Effective Date, the operation of Reorganized Debtor shall become the general responsibility of the Board of Directors of Reorganized Debtor, subject to, and in accordance with, the Certificate of Incorporation and the Transaction Documents. The number of directors on Reorganized Debtor's Board of Directors shall initially be as set forth in the Transaction Documents. On the Effective Date, the Board of Directors of Reorganized Debtor shall be deemed elected pursuant to the Confirmation Order, but shall not take office and shall not be deemed to be elected until the occurrence of the Effective Date.

## I. Release of Liens

Except as otherwise provided in the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III, all interests, mortgages, deeds of trust, liens or other security interests against the property of the Estate and any Plan Party will be fully released and discharged.

## J. Exemption from Certain Transfer Taxes

Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale or assignment of any assets of the Debtor and any deeds (including deeds of real estate assets held by certain Plan Parties), bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for or allowable under section 1146(a) of the Bankruptcy Code.

## K. Implementation; Effectuating Documents; Further Transactions

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan and the Transaction Documents involving the structure, corporate or otherwise, of the Plan Parties will be deemed authorized and approved without any requirement of further action by the Plan Parties, the Plan Parties' shareholders, boards of directors or trustees, as applicable.

Pursuant to the Confirmation Order and upon Confirmation of this Plan, (i) the Plan Parties or Reorganized Debtor, as applicable, shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan; (ii) the Plan Parties or Reorganized Debtor, as the case may be, may execute such documents and take such further actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, authorizations or consents; and (iii) the chairman of the Board of Directors, president, trustee or any other appropriate officer of each Plan Parties or Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such other agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein.

## ARTICLE VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Confirmation Date, all Executory Contracts or unexpired leases, if any, of the Plan Parties shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those Executory Contracts and unexpired leases that (a) have been rejected by order of the Bankruptcy Court, (b) are the subject of a motion to reject pending on the Confirmation Date, (c) are identified on a list to be filed with the Bankruptcy Court on or before the Confirmation Date as to be rejected, or (d) are rejected pursuant to the terms of the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections.

Each such Executory Contract and unexpired lease that is assumed shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or unexpired lease, and (b) all Executory Contracts or unexpired leases appurtenant to the USA Springs Project, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, or other agreements, and any other interests in real estate or rights *in rem* related to such premises.

B.      *Payments Related to Assumption of Contracts and Leases*

Any monetary amounts by which any Executory Contract or unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure

shall occur, at the Debtor's or Reorganized Debtor's option, following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption and/or assumption.

**C.**     *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Any Claim for damages based upon the rejection of any Executory Contract or unexpired lease shall be a Disputed Claim and to the extent Allowed by the Bankruptcy Court, such Claims shall be classified as a Class 4 General Unsecured Claim and may be objected to in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The failure to file a Claim for damages based upon the rejection of an Executory Contract or unexpired lease within forty-five (45) days following the Effective Date shall forever bar such a Claim.

**D.**     *Contracts Entered Into After the Petition Date*

Contracts entered into after the Petition Date, if any, by any Plan Party, including any Executory Contracts and unexpired leases assumed by the Debtor, will be performed by such Plan Party or Reorganized Debtor, as the case may be, in accordance with the terms and conditions of such contracts in the ordinary course of its business. Such contracts and other obligations (including any assumed Executory Contracts and unexpired leases) will survive and remain unaffected by entry of the Confirmation Order, unless provided otherwise in such contract.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**     *Distributions for Claims Allowed as of the Effective Date*

The Reorganized Debtor will make all distributions of Cash, New Common Stock, and other instruments or documents required under the Plan. Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, all distributions with respect to all Allowed Claims (other than Fee Claims) shall be made from the Creditors Escrow Account, as set forth in the Plan. Except as otherwise provided in this Article VII, distributions to be made on the Effective Date to Holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date or as promptly thereafter as practicable. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made in accordance with the provisions of Article VIII of this Plan

**B.**     *Interest on Claims*

Except as otherwise provided herein, or as required under applicable law, Holders of Claims shall not be entitled to interest payments on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**C.**     *Place of Delivery of Distributions*

Distributions to holders of Allowed Claims shall be made by Reorganized Debtor (a) at the addresses set forth on the proofs of Claim filed by such Holders (or the last known address of such Holders if no proof of Claim is filed or if the Debtor has been notified of a change of address); (b) at the address set forth in any written notices of address changes delivered to Reorganized Debtor after

the date of any related proof of Claim, or (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and Reorganized Debtor has not received a written notice of a change of address.

### D. Undeliverable Distributions

1. <u>Holding of Undeliverable Distributions</u>. If any distribution to a Holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until Reorganized Debtor is notified in writing of such Holder's then-current address. Undeliverable distributions shall remain in the possession of Reorganized Debtor pursuant to this Article VII.D until such time as a distribution becomes deliverable.

2. <u>Failure to Claim Undeliverable Distributions</u>. Any Holder of an Allowed Claim or Interest that does not assert a Claim for an undeliverable distribution within 90 days after the later of (a) the Effective Date or (b) the date such claim became an Allowed Claim shall have its claim for such undeliverable distribution discharged and such Holder or successor to such Holder with respect to such property shall be forever barred from asserting any such Claim against Reorganized Debtor, the Plan Parties or their properties. Any Cash held for distribution on account of such claims shall be property of Reorganized Debtor, free of any restrictions thereon and any New Common Stock held for distribution on account of any such Claims or Interests shall be canceled and of no further force or effect.

3. <u>No Duty to Locate</u>. Nothing contained in the Plan shall require the Debtor or Reorganized Debtor to attempt to locate any holder of an Allowed Claim or Interest beyond a normal general search, including use of the internet.

### E. Compliance with Tax Requirements

In connection with this Plan and all distributions hereunder, to the extent applicable, Reorganized Debtor will comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim or Interest that is to receive a distribution of New Common Stock pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

### F. Setoffs

Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Plan Parties may have against the Holder of such Claim; _provided_, _however_, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Parties of any such claim that the Plan Parties may have against the Holder of such Claim.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Resolution of Disputed Claims

After the Confirmation Date, the Reorganized Debtor shall have the exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims or Interests. From and after the Effective Date, Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Reorganized Debtor may object to a Claim or Interest by the Claims Objection Bar Date.

### B.    Claims Allowance

The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including to the extent possible during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### C.    Payments and Distributions on Disputed Claims

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim.

### D.    Voting Rights of Holders of Disputed Claims

Pursuant to Bankruptcy Rule 3018(a), to the extent it becomes applicable, a Disputed Claim will not be counted for purposes of voting on this Plan to the extent it is a Disputed Claim, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes shall be without prejudice to the holders of such Disputed Claim seeking to have such Disputed Claim become an Allowed Claim for purposes of distribution under this Plan.

# ARTICLE IX.

## SUBSTANTIVE CONSOLIDATION

### A. *Consolidation of the Related Entities With the Debtor's Estate*

Pursuant to the Stipulation and the Jurisdiction Agreements, the Plan contemplates and is predicated upon entry of the Confirmation Order effecting the substantive consolidation of the Plan Parties and their assets for the purposes of all actions associated with confirmation and consummation of the Plan. On the Confirmation Date, subject to the occurrence of the Effective Date: (a) all inter-company Claims by and among the Plan Parties shall be eliminated and extinguished; (b) all assets and liabilities of the Plan Parties shall be treated as though they were merged; (c) all prepetition cross-corporate guarantees of the Plan Parties, if any, shall be eliminated; (d) any obligation of any Plan Party and all guarantees thereof executed by one or more of the Plan Parties shall be deemed to be one obligation of the consolidated Plan Parties; (e) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Plan Parties; (f) each and every Claim filed in the Chapter 11 Case shall be deemed filed against the consolidated Plan Parties and shall be deemed a single obligation of all of the Plan Parties under the Plan on and after the Confirmation Date; (g) all duplicative claims (identical in both amount and subject matter) filed against more than one of the Plan Parties will be automatically expunged so that only one Claim survives against the consolidated Plan Parties but in no way shall be deemed Allowed solely by reason of this section of the Plan; and (h) the consolidated Plan Parties will be deemed, for purposes of determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, so that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to a particular Plan Party may be offset against claims against such Plan Party or another Plan Party. On the Confirmation Date, and subject to the occurrence of the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Plan Parties, all Claims based upon guarantees of collection, payment or performance made by the Plan Parties as to the obligations of another Plan Party or of any other Person shall be discharged, released and of no further force and effect. The foregoing shall be effective without necessity of any merger or like transaction under applicable non-bankruptcy laws

### B. *Substantive Consolidation Order*

The Plan will serve as a motion seeking entry of an order substantively consolidating the Plan Parties and their assets, as set forth herein. Unless an objection to substantive consolidation is made in writing by any Creditor affected by the Plan as herein provided on or before the Plan Objection Deadline, an order substantively consolidating the Plan Parties and their assets, including as part of the Confirmation Order may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto will be scheduled by the Bankruptcy Court, which hearing may coincide with the Confirmation Hearing.

### C. *Reservation of Rights*

The Debtor reserves the right at any time up to the conclusion of the Confirmation Hearing to withdraw its request for substantive consolidation, to seek Confirmation of the Plan as if there

were no substantive consolidation, and to seek Confirmation of the Plan with respect to one or more Plan Parties even if Confirmation with respect to other Plan Parties is denied.

## ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to Confirmation*

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Article X.C of this Plan:

1.    An order shall have been entered finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

2.    The Confirmation Order in form and substance reasonably acceptable to the Debtor shall have been entered approving all provisions, terms and conditions of this Plan, and any amendments thereto, including approval of the Loan Transaction.

3.    The Substantive Consolidation Order in form and substance reasonably acceptable to the Debtor shall have been entered.

B.    *Conditions Precedent to Consummation*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article X.C of this Plan:

1.    The Confirmation Date shall have occurred and the Confirmation Order shall have been entered.

2.    All actions, documents and agreements necessary to implement the Plan, including without limitation, such documents relating to the Loan Transaction, shall have been effected or executed and, as necessary, filed with the appropriate governmental authorities. All conditions precedent to such documents and agreements shall have been satisfied or been waived in accordance with the terms of such agreements or documents.

3.    The Certificate of Incorporation shall have been executed, delivered, and filed with the appropriate governmental authorities, and all conditions precedent thereto shall have been satisfied.

4.    Reorganized Debtor shall have executed, as appropriate, and distributed to each holder of New Common Stock a copy of the investors rights agreement or similar document.

5.    All conditions precedent to the obligations of the Lender pursuant to the Transaction Documents shall have been satisfied or waived in accordance with the terms thereof.

6. The amounts payable by Lender in accordance with the Transaction Documents shall have been paid.

7. The closing of the Loan Transaction shall have occurred.

8. The Retained Professionals Escrow Account and the Creditors Escrow Account shall have been opened.

## C. *Waiver of Conditions*

Except where prohibited by law, each of the conditions set forth in Article X.A and B of this Plan may be waived in whole or in part by the Debtor without any other notice to parties in interest or the Bankruptcy Court and without hearing.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code and in compliance with LBR 3021-1, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters involving the Plan Parties and arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b) Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan, including under sections 330, 331, and 503(b) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date, the payment of the fees and expenses of Professionals retained by Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c) Hear and determine all matters with respect to the assumption or rejection of any Executory Contract or unexpired lease to which a Plan Party is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d) Hear and determine the Causes of Action of the Debtor or any other Plan Party;

(e) Effectuate performance of and payments under the provisions of the Plan;

(f)     Hear and determine any and all objections to Claims, adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

(g)     Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Transaction Documents, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or Confirmation Order;

(h)     Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under the Transaction Documents or other agreements, documents or instruments executed in connection with or related to the Plan, and the Loan Transaction;

(i)     Grant extensions of any deadline set forth in the Confirmation Order;

(j)     Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, consummation, or enforcement of the Plan, the Confirmation Order, the Loan Transaction, or completion of the USA Springs Project;

(l)     Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(m)     Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)     Enforce all orders, judgments, discharge provisions, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case, the Debtor, the other Plan Parties, and the USA Springs Project;

(o)     Except as otherwise limited herein, recover all assets of the Plan Parties and property of the Estate and Plan Parties wherever located;

(p)     Hear and determine matters concerning state, local, and federal taxes, including in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(q)     Hear and determine any use, sale or lease of property pursuant to Section 363 of the Bankruptcy Code, as applicable;

(r)     Hear and determine any requests for relief pursuant to Section 364 of the Bankruptcy Code, as applicable;

(s)     Hear and determine all matters regarding any return of deposits and rights to pursue legal fee reimbursement;

(t)     Hear and determine all disputes involving the existence, nature, or scope of the Plan Parties' discharge;

(u)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(v)     Enter a final decree closing the Chapter 11 Case.

## ARTICLE XII.

## EFFECT OF CONFIRMATION

*A.     Binding Effect*

The provisions of this Plan shall be binding upon and inure to the benefit of the Plan Parties, Reorganized Debtor, all current and former Holders of Claims against and Interests in the Plan Parties and their respective successors and assigns, and all other parties-in-interest in the Chapter 11 Case and Persons affected by this Plan.

*B.     Discharge of Plan Parties*

All consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against or Interests in the Plan Parties of any nature whatsoever, or against any of the Plan Parties' assets or properties.  Subject to the occurrence of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, entry of the Confirmation Order shall act as a discharge under section 1141(d)(1)(A) of the Bankruptcy Code from and of all Claims against, liens on, and Interests in each of the Plan Parties, their assets, and their properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim or proof of Interest therefor was filed, whether the Claim or Interest is Allowed, or whether the holder thereof votes to accept this Plan or is entitled to receive a distribution hereunder.  Upon entry of the Confirmation Order, and subject to the occurrence of the Effective Date, any holder of such a discharged Claim or Interest shall be precluded from asserting against the Plan Parties and  Reorganized Debtor or any of their assets or properties any other or further Claim or Interest based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the date of entry of the Confirmation Order.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Plan Parties, subject to the occurrence of the Effective Date.

## C.    *Injunction*

Pursuant to section 524 of the Bankruptcy Code, the discharge provided by Article XII.B of this Plan and section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover the Claims and Interests discharged thereby. Except as otherwise expressly provided in this Plan or the Confirmation Order, all Persons which have held, hold, or may hold Claims against or Interests in the Plan Parties will be permanently enjoined, on and after the Confirmation Date, subject to the occurrence of the Effective Date, from (a) commencing or containing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Plan Parties on account of any such Claim or Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Plan Parties or against the property or interests in property of the Plan Parties on account of any such Claim or Interest, and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Plan Parties or against the property or interests in property of the Plan Parties on account of any such Claim or Interest. The foregoing injunction will extend to successors of the Plan Parties (including, but not limited to, Reorganized Debtor) and their respective properties and interests in property.

## D.    *Releases*

Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the Plan Parties and Reorganized Debtor shall be presumed conclusively to have released the Releasees and their respective property, from any and all claims, obligations, rights, Causes of Action, demands, suits, proceedings, and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, based in whole or in part on any act or omission transaction, state of facts, circumstances or other occurrences taking place prior to or on the Effective Date arising from or related in any way to the Plan Parties, the Estate, or the Reorganized Debtor, including, without limitation, those that any of the Plan Parties or the Reorganized Debtor would have been legally entitled to assert or that any Holder of a Claim or Interest or other Person would have been legally entitled to assert for or on behalf of any of the Plan Parties or the Estate or the Reorganized Debtor and further including those in any way related to the Chapter 11 Case or the Plan; *provided, however,* the foregoing provisions of this Article XII.D shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; and *provided, further,* (i) the foregoing release shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or Plan Supplement, and (ii) the Plan Parties and Reorganized Debtor shall have the right to pursue such rights of action, including the rights under section 502(d) of the Bankruptcy Code, as a defensive measure, including for purposes of setoff against distributions, if any, due to a holder of a Claim or Interest pursuant to this Plan, and such rights shall be exercised exclusively by Reorganized Debtor.

*E.      Exculpation*

The Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11 Case, the formulating, negotiating, preparing, disseminating, implementing, administering the Plan, or otherwise, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Plan Parties or confirming or consummating the Plan; *provided, however*, that the foregoing provisions of this Article XII.E shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

*A.      Payment of Statutory Fees*

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing or otherwise, shall be paid on or before the Effective Date. All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by Reorganized Debtor.

*B.      Severability of Plan Provisions*

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

*C.      Successors and Assigns*

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

*D.      Waiver of Enforcement of Subordination*

All Claims against and Interests in the Plan Parties and all rights and claims between or among Holders of Claims and Interests relating in any manner whatsoever to Claims against and Interest in the Plan Parties, based on claimed subordination rights (if any), shall be deemed satisfied

by the distributions under the Plan to Holders of Claims and Interests having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date, and all actions related to the enforcement of such subordination rights shall be permanently enjoined. Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.

### E. Modification and Amendment of Plan Documents

The Debtor may alter, amend, or modify the Plan, related Disclosure Statement, and Plan Supplement, including exhibits or schedules thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, including with respect to an Alternative Transaction or Liquidating Plan, as applicable, as set forth in Article V.A.

After the entry of the Confirmation Order but before the Effective Date, the Debtor may, without approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, insofar as it does not materially adversely affect the interest of Holders of Claims and Interests, correct any defect, omission or inconsistencies in this Plan, related Plan documents in such manner and to such extent as may be necessary to expedite the execution of this Plan.

After the entry of the Confirmation Order and the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistencies in the Plan and related Plan documents, or the Confirmation Order in such manner as may be necessary to carry out the purposes and provisions of the Plan.

### F. Dissolution of Committee

On the Effective Date, the Committee shall dissolve and its respective members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to the Chapter 11 Case; *provided*, *however*, that the Committee and its Professionals, as applicable, shall be retained with respect to (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, and (ii) the Chapter 5 Claims that may be pursued by the Committee as set in Article V.F.

### G. Revocation, Withdrawal, or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan and no acts taken in preparation for Consummation of the Plan shall: (i) constitute or be deemed to constitute a waiver or release of any Claim by or against, or any Interests in any Plan Party or any other Person; (ii) prejudice in any manner the rights of any Plan Party or any other Person in any

further proceedings involving a Plan Party; or (iii) constitute an admission of any sort by any Plan Party or any other Person.

## H. Exemption From Registration; Section 1145 of the Bankruptcy Code

In connection with the consummation of the Plan, the Plan Parties will rely on section 1145 of the Bankruptcy Code to the extent it is applicable, to exempt the issuance of the New Common Stock from the registration requirements of the Securities Act of 1933 and of any state securities or "blue sky" laws. Section 1145 of the Bankruptcy Code exempts from registration the distribution of a debtor's securities under a Chapter 11 plan if such securities are offered or sold in exchange, or primarily in exchange, for a claim against, or equity interest in, or a claim for an administrative expense in a case concerning, such debtor.

## I. Notices

Any notice, request, or demand required or permitted to be made or provided to or upon a Plan Party or Reorganized Debtor under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> USA Springs, Inc.
> 155 Old Turnpike Road
> Nottingham, NH 03290
> Attn: Francesco Rotondo

> with copies to:

> Alan L. Braunstein, Esq.
> Riemer & Braunstein LLP
> Three Center Plaza
> Boston, MA 02108
> (617) 523-9000
> abraunstein@riemerlaw.com

> and

> Bruce A. Harwood, Esq.
> Sheehan Phinney Bass + Green P.C.
> 1000 Elm Street
> P.O. Box 3701
> Manchester, NH 03105-3701
> (603) 627-8139
> bharwood@sheehan.com

## J. Term of Injunctions or Stays

Except as otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

*DEBTOR*

USA SPRINGS, INC , a Delaware corporation

By: _____

Name: Francesco Rotondo
Title: President

<u>*DEBTOR RELATED ENTITIES:*</u>

USA SPRINGS, INC.,
a New Hampshire corporation

By:
Name: Francesco Rotondo
Title: President

GARRISON PLACE REAL ESTATE
INVESTMENT TRUST

By:
Francesco Rotondo, Trustee

SWEET REVIEW REALTY TRUST

By:
Francesco Rotondo, Trustee

JUST CAUSE REALTY TRUST

By:
Francesco Rotondo, Trustee

_RELATED ENTITY:_

AMICI REAL ESTATE TRUST

By: _Ralph Faiella_
Ralph Faiella, Jr., Trustee