| | |
|---|---|
| In re | ) |
| | ) Chapter 11 |
| USA SPRINGS, INC., | ) Case No. 08-11816 (JMD) |
| | ) |
| Debtor. | ) |
| | ) |

## FOURTH AMENDED PLAN OF USA SPRINGS, INC. AND RELATED ENTITES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**Dated:**       **October 8, 2010**

| Affected Entities: |
|---|
| USA Springs, Inc., a Delaware corporation (the "Debtor") |
| USA Springs, Inc., a New Hampshire corporation |
| Garrison Place Real Estate Investment Trust |
| Just Cause Realty Trust |
| Sweet Review Realty Trust |
| Amici Real Estate  Trust |

Alan L. Braunstein, Esq.
Macken Toussaint, Esq.
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA  02108
(617) 523-9000
abraunstein@riemerlaw.com
mtoussaint@riemerlaw.com

Bruce A. Harwood, Esq.
Sheehan Phinney Bass + Green P.A.
1000 Elm Street
P.O. Box 3701
Manchester, NH  03105-3701
(603) 627-8139
bharwood@sheehan.com

COUNSEL TO THE DEBTOR

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW
AND DEFINED TERMS ........................................................................................... 4
    A.    Rules of Interpretation, Computation of Time and Governing Law ............................ 4
    B.    Defined Terms .................................................................................................... 5

ARTICLE II. UNCLASSIFIED CLAIMS AND TREATMENT ...................................... 12
    A.    Administrative Expense Claims ................................................................................ 13
    B.    Priority Tax Claims .................................................................................................. 13

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND
INTERESTS ............................................................................................................. 14
    A.    Summary ................................................................................................................ 14
    B.    Classification and Treatment of Claims and Interests ........................................... 14
    C.    Intercompany Claims ............................................................................................. 19
    D.    Special Provisions Regarding Subordinated Claims .............................................. 19
    E.    Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims
           ........................................................................................................................... 19
    F.    Additional Recoveries/ Plan Funding Balance ...................................................... 19
    G.    Committee Lawsuit ................................................................................................ 20
    H.    Estimated Claims .................................................................................................. 20

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN .................................. 20
    A.    Each Impaired Class Entitled to Vote ..................................................................... 20
    B.    Acceptance by Impaired Classes ........................................................................... 20
    C.    Classes Entitled to Vote ......................................................................................... 20
    D.    Non-Consensual Confirmation .............................................................................. 20

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN .................................. 21
    A.    Proposed Transaction and Alternative Transaction ................................................ 21
    B.    Substantive Consolidation ..................................................................................... 22
    C.    Corporate Existence and Vesting of Assets in Reorganized Debtor ...................... 23
    D.    Issuance of New Common Stock and Transmission of Instruments ....................... 23
    E.    Cancellation and Surrender of Existing Securities and Agreements ...................... 23
    F.    Preservation of Rights of Action; Settlement of Causes of Action ........................ 23
    G.    Certificate of Incorporation and By-Laws ............................................................. 23
    H.    Directors and Officers; Post-confirmation Management ........................................ 24
    I.    Release of Liens .................................................................................................... 24
    J.    Exemption from Certain Transfer Taxes ................................................................. 24
    K.    Implementation; Effectuating Documents; Further Transactions ........................... 24

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .. 25
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases .............. 25
    B.    Payments Related to Assumption of Contracts and Leases ..................................... 25

    C.       Claims Based on Rejection of Executory Contracts or Unexpired Leases ............... 26

    D.      Contracts Entered Into After the Petition Date ......................................................... 26

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS ................................................ 26

    A.      Distributions for Claims Allowed as of the Effective Date ........................ 26

    B.      Interest on Claims ....................................................................................... 26

    C.      Place of Delivery of Distributions .............................................................. 26

    D.      Undeliverable Distributions ........................................................................ 27

    E.      Compliance with Tax Requirements ............................................................ 27

    F.      Setoffs ......................................................................................................... 27

ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS ............................... 28

    A.      Claims Objection and Resolution ............................................................... 28

    B.      Claims Allowance ....................................................................................... 28

    C.      Payments and Distributions on Disputed Claims ........................................ 28

    D.      Voting Rights of Holders of Disputed Claims ............................................ 28

ARTICLE IX. SUBSTANTIVE CONSOLIDATION ................................................................. 29

    A.      Consolidation of the Related Entities With the Debtor's Estate ................ 29

    B.      Substantive Consolidation Order ................................................................ 29

    C.      Reservation of Rights .................................................................................. 29

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
THE PLAN ....................................................................................................................... 30

    A.      Conditions Precedent to Confirmation ....................................................... 30

    B.      Conditions Precedent to Consummation ..................................................... 30

    C.      Waiver of Conditions .................................................................................. 31

ARTICLE XI. RETENTION OF JURISDICTION ................................................................... 31

ARTICLE XII. EFFECT OF CONFIRMATION ...................................................................... 32

    A.      Binding Effect ............................................................................................. 32

    B.      Discharge of Plan Parties ............................................................................ 32

    C.      Injunction .................................................................................................... 33

    D.      Releases ....................................................................................................... 33

    E.      Exculpation ................................................................................................. 33

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............................................................... 34

    A.      Payment of Statutory Fees .......................................................................... 34

    B.      Severability of Plan Provisions ................................................................... 34

    C.      Successors and Assigns ............................................................................... 34

    D.      Waiver of Enforcement of Subordination ................................................... 34

    E.      Modification and Amendment of Plan Documents ..................................... 35

    F.      Dissolution of Committee ............................................................................ 35

    G.      Revocation, Withdrawal, or Non-Consummation ...................................... 35

    H.      Exemption From Registration; Section 1145 of the Bankruptcy Code ...... 36

    I.       Notices ......................................................................................................... 36

J.      Term of Injunctions or Stays.................................................................................... 36
K.      Inconsistencies ........................................................................................................ 37

## FOURTH AMENDED PLAN OF USA SPRINGS, INC. AND RELATED ENTITIES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., USA Springs, Inc., a Delaware corporation, the Debtor, and the Related Entities (as defined herein) hereby respectfully propose the following Chapter 11 plan:

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

*A.      Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (i) the terms of the Plan are not intended to alter the terms of the Transaction Documents in any way and in the event of any inconsistency between the terms of the Plan and the Transaction Documents, the terms of the Transaction Documents shall control.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of New Hampshire, without giving effect to the principles of conflict of laws thereof.

*B.     Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     *"Administrative Expense Claim"* means (a) any cost and expense of administration of the Chapter 11 Case or related to the preservation of the Estate and the USA Springs Project (including, without limitation Fee Claims of Professionals) asserted or arising under sections 503(b) or 507(b) of the Bankruptcy Code, (b) a Claim given the status of an Administrative Expense Claim by Final Order of the Bankruptcy Court, and (c) all fees or charges assessed against the Estate under Title 28 United States Code, section 1930; *provided that* Administrative Expense Claims shall not include the Consolidated Administrative Claims.

2.     *"Affiliate"* has the meaning set forth at section 101(2) of the Bankruptcy Code.

3.     *"Allowed"* means, with respect to a Claim or any portion thereof, a Claim: (a) that has been scheduled by the Debtor in its Schedules as neither disputed, contingent nor unliquidated and for which the amount has not been identified as unknown, and a proof of Claim for a different amount has not been filed and as to which no objection has been filed by the Claims Objection Bar Date; (b) that either is not a Disputed Claim or has been allowed by a Final Order (subject to any reservation of rights of the Debtor); (c) that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court (subject to any reservation of rights of the Debtor); (ii) in any stipulation with the Debtor of amount and nature of Claim executed on or after the Confirmation Date and approved by the Bankruptcy Court; or (iii) in or pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; (d) relating to a rejected Executory Contract or unexpired lease that has been allowed by a Final Order after a proof of Claim has been filed by the applicable bar date; (e) for which a proof of Claim in a liquidated amount has been timely filed with the Bankruptcy Court and as to which no objection to its allowance has been filed by the Claims Objection Bar Date; or (f) is allowed pursuant to the terms hereof.

4.     *"Alternative Transaction"* shall be as set forth in Article 5.A.

5.     *"Amici Trust"* means Amici Real Estate Trust.

6.     *"Ballots"* mean the ballots that accompanied the approved Disclosure Statement and any subsequent notice or supplement to the Disclosure Statement.

7.     *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. et seq., as now in effect or hereafter amended and applicable to the Chapter 11 Case.

8.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of New Hampshire, having jurisdiction over the Chapter 11 Case.

9.     *"Bankruptcy Rules"* means, collectively, the Federal Rules of Bankruptcy Procedure, and the local rules of the Bankruptcy Court as now in effect or hereafter amended, as applicable to the Chapter 11 Case.

10. *"Bar Date"* means (i) September 1, 2009 with respect to claims of the Debtor's Creditors, (ii) as subsequently ordered by the Bankruptcy Court with respect to separate Creditors of the Related Entities, if any, and any other Claims not addressed pursuant to prior bar date orders or this Plan, and (iii) as set forth in this Plan for Administrative Expense Claims.

11. *"Breach of Contract Claims"* mean claims related to breach of prepetition construction contracts or agreements filed by (i) Diom LLC in the approximate amount of $1,106,250, and (ii) Aho Construction, Inc. in the approximate amount of $6,852,650.

12. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

13. *"Cash"* means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

14. *"Causes of Action"* means all actions, causes of action, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based on whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

15. *"Chapter 11 Case"* means the chapter 11 case of the Debtor under chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court.

16. *"Claim"* means a "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Plan Parties, whether or not asserted.

17. *"Claims Objection Bar Date"* means, for each Claim, the later of (a) 180 days after the Effective Date, or (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

18. *"Class"* means a class or category of Holders of Claims or Interests as set forth in Article III pursuant to sections 1122 and 1123(a) of the Bankruptcy Code.

19. *"Closing"* means closing of a transaction that the Debtor accepts and receipt of (i) the Plan Funding by the Debtor or Reorganized Debtor, as applicable, and (ii) sufficient proof of fund (i.e. bank statement or other document acceptable to the Debtor) as to the balance of the total loan amount to fund the USA Springs Project which shall be disbursed to the Reorganized Debtor in accordance with the applicable Transaction Documents.

20. *"Committee"* means the official committee of unsecured creditors of the Debtor appointed by the United States Trustee in the Chapter 11 Case on July 15, 2008, pursuant to section 1102 of the Bankruptcy Code, comprised of the Committee Members and as reconstituted or changed on June 24, 2009 and from time to time.

21. *"Committee Lawsuit"* means the adversary proceeding filed by the Committee on or about June 24, 2010 with the Bankruptcy Court against Roswell, the Debtor, the Debtor Related Entities, and certain other third parties.

22. *"Committee Members"* means the members of the Committee, namely: (i) W.C. Cammett Engineering, Inc., (ii) DIOM, LLC (Dynamic Industrial Operations Management), (iii) NHSC, Inc. (n/k/a Morse & Long, Inc.), and (iv) Mykrowaters, Inc., and any predecessors of such entities.

23. *"Confirmation"* means the entry of the Confirmation Order by the Bankruptcy Court in the Chapter 11 Case.

24. *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order of the Chapter 11 Case.

25. *"Confirmation Hearing"* means the hearing to consider the Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as such hearing may be continued from time to time.

26. *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and in compliance with LBR 3020-1(c).

27. *"Consolidated Administrative Claims"* mean Claims for services rendered or performed with respect to the Debtor Related Entities subsequent to the Petition Date.

28. *"Creditor"* means any Holder of a Claim.

29. *"Cure"* means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an Executory Contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, or such other amount as may be agreed upon by the parties, under such Executory Contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable laws.

30. *"Debtor"* means USA Springs, Inc., a Delaware corporation.

31. *"Debtor Related Entities"* mean N.H. Corp, Garrison Trust, Just Cause Trust, and Sweet Review Trust.

32. *"Disclosure Statement"* means the disclosure statement for the Plan, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and referenced therein.

33. *"Disclosure Statement Order"* means the order of the Bankruptcy Court approving the Disclosure Statement in compliance with LBR 3017-1.

34.    "*Disputed Claim*" means (a) any Claim against a Plan Party, or a portion thereof, that is not an Allowed Claim, (b) a Claim related to rejected Executory Contracts or unexpired leases, (c) a Breach of Contract Claim, or (d) the Subordinated Claims.

35.    "*Effective Date*" means the first Business Day following the day on which all conditions set forth in Article X.B have been satisfied or waived.

36.    "*Escrow Account*" means a segregated account to be established on behalf of the Debtor or Reorganized Debtor, as applicable, and to be held by counsel to the Debtor in a US Trustee approved depository containing the Plan Funding.

37.    "*Estate*" means, the estate of the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

38.    "*Exculpated Parties*" mean:  (a) the Plan Parties; (b) the Reorganized Debtor; and (c) the Releasees.

39.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

40.    "*Fee Claim*" means a Claim under sections 328, 329, 330, or 331 of the Bankruptcy Code for the compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Case prior to and including the Effective Date, including fees of the interim chapter 7 trustee and his counsel. For the avoidance of doubt, Fee Claims do not include Roswell's fee claims which shall be satisfied in accordance with Article III.B.2 of this Plan.

41.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing will have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

42.    "*First Lien Secured Claim*" means the Secured Claim of Roswell against the Debtor and the Debtor Related Entities in connection with the Pre-Petition Credit Agreement, subject to the carve-out under the Stipulation, as applicable.

43.    "*Garrison Trust*" Garrison Place Real Estate Investment Trust, created by a declaration of trust dated as of April 23, 1998.

44.    "*General Unsecured Claim*" means any Claim against any Plan Party that is not a/an (a) Administrative Expense Claim, (b) Secured Claim, (c) Priority Tax Claim, (d) Other Priority Claim, (e) Post-Petition Secured Claim, (f) Consolidated Administrative Claims, (g) Insider Claims, (h) a Claim asserted on account of an Interest, (i) Intercompany Claim, or (j) Subordinated Claim; provided that General Unsecured Claim may include the Claim of Amici Trust's beneficiary.

45. *"Holder"* means a Person holding an Interest or Claim.

46. *"Impaired"* means, with respect to any Class of Claims or Interests, any Claims or Interests that are impaired within the meaning of section 1124 of the Bankruptcy Code.

47. *"Intercompany Claims"* means any and all Claims and Interests of a Plan Party against and in another Plan Party.

48. *"Insider"* shall have the meaning set forth in Section 101(31) of the Bankruptcy Code (i.e. director, officer, or person in control of the Debtor; partnership in which the Debtor is a general partner, general partner of the Debtor; or relative of a general partner, director, officer, or person in control of the Debtor).

49. *"Interest"* means the legal, equitable, contractual, and other rights of any Holder of any share of common stock, preferred stock, beneficial interest or other instrument evidencing a current ownership interest in any of the Plan Parties, whether or not transferable, and any option, warrant or right, contractual or otherwise, to purchase, sell, subscribe for, or otherwise acquire or receive any such Interest in a Plan Party.

50. *"Judgments"* mean the default judgments entered by the Bankruptcy Court in certain adversary proceedings filed by the Debtor against American United Capital Inc. (Case No. 10-01062) and Chappo & Co (Case No. 10-10163) for recovery of prepetition deposits of the Debtor.

51. *"Jurisdiction Agreements"* mean (i) the Jurisdiction Agreement, dated as of May 27, 2009, among the Debtor and the Debtor Related Entities, and (ii) the Jurisdiction Agreement, dated as of May 27, 2009 between the Debtor and the Amici Trust.

52. *"Just Cause Trust"* means Just Cause Realty Trust, created by a declaration of trust dated as of June 2, 2003.

53. *"Lender"* means Lower Falls, WTB, or any other investor or lender that consummate the Closing.

54. *"Lower Falls"* means Lower Falls Funding, LLC.

55. *"Mechanic's Lien Claim"* means Secured Claim of Aho Construction, Inc. to the extent such Claim is an enforceable mechanic's lien.

56. *"New Common Stock"* means the shares of new common stock of Reorganized Debtor authorized pursuant to the applicable Organizational Document and as referenced to in Article III.B of this Plan.

57. *"N.H. Corp"* means USA Springs, Inc., a New Hampshire corporation

58. *"Organizational Document"* means, collectively, (i) the certificate of incorporation of Reorganized Debtor, (ii) the by-laws of Reorganized Debtor, and (iii) any such other similar document that may be necessary and appropriate.

59. *"Other Priority Claim"* means any and all Claims accorded priority in right of payment under sections 507(a) and 1129(a)(9) (A) and (B) of the Bankruptcy Code, other than a Priority Tax Claim, Tax Municipalities Secured Claim, or an Administrative Expense Claim.

60. *"Other Secured Claim"* means any and all other Secured Claims against the Plan Parties, but not including the Post-Petition Secured Claim, the First Lien Secured Claim, and the Mechanic's Lien Claim.

61. *"Person"* means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, trustee, United States Trustee, estate, unincorporated organization, government, governmental unit, agency, or political subdivision thereof, or other entity.

62. *"Petition Date"* means June 27, 2008, the date on which the Debtor commenced the Chapter 11 Case.

63. *"Plan"* means this amended plan under chapter 11 of the Bankruptcy Code, either in present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, as the case may be, together with the Plan Supplement, which is incorporated herein by reference.

64. *"Plan Funding"* means $16,600,000 for the benefit of Allowed Claims and Fee Claims, including post-confirmation Fee Claims, to be deposited in the Escrow Account.

65. *"Plan Objection Deadline"* means the deadline by which Creditors or parties in interest shall have to object to confirmation of the Plan, as set forth in the Disclosure Statement Order, any subsequent order of the Bankruptcy Court and/or applicable notice.

66. *"Plan Parties"* means the Debtor and the Related Entities.

67. *"Plan Supplement"* means the compilation of (i) the applicable Transaction Documents and related schedules and exhibits, and (ii) any corporate or other document that may be necessary to be filed with appropriate notice with the Bankruptcy Court after consummation of a Transaction.

68. *"Post-Petition Secured Claim"* means the deposit borrowed from Christian Bistany by the Debtor in connection with the Lower Falls transaction and all other amounts payable pursuant to the June 17, 2010 Order Approving Motion for Order Authorizing the Debtor to Borrow $137,500.00 From Third Party Under Section 364(C)(2) and (3) of the Bankruptcy Code in Connection with Certain Loan Commitment, and (B) Granting Certain Non-Priming Lien Protections to Such Third Party.

69. *"Prepetition Credit Agreement"* means that certain Commercial Loan Agreement and Construction Loan Agreement, both dated as of March 26, 2007, among Roswell and the Debtor Related Entities, and related transaction and guaranty documents (as amended, supplemented or otherwise modified).

70. *"Priority Tax Claim"* means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code, which shall not include Tax Municipalities Secured Claims.

71. *"Professional"* means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any professionals seeking compensation or reimbursement of expenses in connection the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

72. *"Related Entities"* mean the Debtor Related Entities and Amici Trust.

73. *"Releasees"* mean, collectively, (a) all current and former officers, directors, employees, trustees and beneficiaries of the Plan Parties, the Reorganized Debtor and their subsidiaries, as applicable, and (b) all attorneys, financial advisors, accountants, professionals, agents, Affiliates and representatives of the Plan Parties, the Reorganized Debtor and their subsidiaries, as applicable.

74. *"Remaining Shares"* mean the balance of the New Common Stock after issuance of the required New Common Stock in connection with a Transaction.

75. *"Reorganized Debtor"* means USA Springs, Inc., a Delaware corporation, as reorganized, or its successor, on and after the Effective Date.

76. *"Roswell"* means Roswell Commercial Mortgage, LLC, and all permitted assigns, transferees and successors in interest thereto.

77. *"Roswell Carveout"* means the carveout provided in the Stipulation for the benefit of the counsel to the Debtor and the Committee.

78. *"Schedules"* mean the schedules of assets and liabilities, and the statements of financial affairs filed in the Bankruptcy Court by the Debtor as such schedules or statements may be amended, modified or supplemented from time to time.

79. *"Secondary Liability Claim"* means a Claim that arises from a Plan Party being liable as a guarantor of, or otherwise being jointly, severally or secondarily liable for, any contractual, tort or other obligation of another Plan Party, including any Claim based on: (a) guaranties of collection, payment or performance; (b) contingent liabilities arising out of contractual obligations or out of undertakings (including any assignment or other transfer) with respect to leases, operating agreements or other similar obligations made or given by a Plan Party relating to the obligations or performance of another Plan Party; (c) vicarious liability; (d) liabilities arising out of piercing the corporate veil, alter ego liability or similar legal theories; or (e) any other joint or several liability that any Plan Party may have in respect of any obligation that is the basis of a Claim.

80. *"Secured Claims"* means Claims that are secured by a lien on property in which the Estate or the Plan Parties have an interest, which liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the applicable Plan Party's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

81.    *"Stipulation"* means that certain Stipulation on Motion to Reconsider Order Granting Motion to Convert Case, dated as of April 27, 2009, between the Debtor, the Debtor Related Entities, and Roswell, as amended, supplemented and in effect from time to time.

82.    *"Subordinated Claims"* mean (i) Claims of the type described in, and subject to subordination under, section 510 of the Bankruptcy Code; and (ii) any Claim against any of the Plan Parties whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such fees are punitive in nature) or for multiple, exemplary or punitive damages.

83.    *"Substantive Consolidation Order"* means that order of the Bankruptcy Court approving the substantive consolidation of the Plan Parties and their assets with respect to this Plan which order may be included in the Confirmation Order.

84.    *"Sweet Review Trust"* means Sweet Review Realty Trust, created by a declaration of trust dated as of April 2006.

85.    *"Tax Municipalities"* mean the cities, towns or municipalities in which the properties of the Plan Parties are located to the extent of their Claims for unpaid real estate taxes.

86.    *"Tax Municipalities Secured Claims"* mean the claims of the Tax Municipalities arising from unpaid real estate taxes due and payable as of the Effective Date, whether or not the applicable Tax Municipality has filed a proof of claim or has filed a proof of claim that is identified as unsecured.

87.    *"Transaction"* means the transaction of any Lender.

88.    *"Transaction Documents"* mean that certain loan agreement, building loan contract, and/or other financing agreement to be entered into between, among others, the Debtor and the Lender and other related agreements and documents, including any commitment documents.

89.    *"Unimpaired"* means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

90.    *"USA Springs Project"* means the development of a commercial water bottling production facility by the Debtor and its business group.

91.    *"WTB"* means WTB-Invest a.s. of Denmark.

92.    *"WTB LOI"* means, the letter agreement, dated as of September 24, 2010, between the Debtor and WTB, as may be amended.

## ARTICLE II.

## UNCLASSIFIED CLAIMS AND TREATMENT

As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims (including Fee Claims), and Priority Tax Claims shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately as

unclassified Claims. As referenced in Article V, this Plan contemplates the closing of a Transaction. In the event a Transaction is not consummated and the Plan is amended to incorporate the Alternative Transaction, the treatment of such Administrative Expense Claims, Fee Claims, and Priority Tax Claims may change.

## A. Administrative Expense Claims

1. <u>Payment of Administrative Expense Claims</u>. Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each Holder of an Allowed Administrative Expense Claim will be paid the full agreed unpaid amount of such Claim in Cash (a) on or as soon as practicable after the Effective Date; (b) or if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; or (c) upon such other terms as may be agreed upon by such Holder and the Debtor. Payment of Fee Claims from the Plan Funding shall be in addition to other payments, if any, under Article III.F. Notwithstanding the foregoing, the Holder of an Allowed Administrative Expense Claim may receive such other, less favorable treatment as may be agreed upon by such Holder and the Debtor.

2. <u>Filing and Allowance of Fee Claims</u>. Each Professional who holds or asserts a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court and serve on all parties required to receive notice a fee application within sixty (60) days after the Effective Date. The failure to file and serve the fee application timely and properly shall result in the Fee Claim being forever barred and discharged unless otherwise ordered by the Bankruptcy Court. A Fee Claim, with respect to which a fee application has been properly filed and served, shall become an Allowed Fee Claim to the extent allowed by Final Order of the Bankruptcy Court.

3. <u>Filing and Allowance of Other Administrative Expense Claims.</u> The Holder of an Administrative Expense Claim (other than Fee Claims), if any, must file with the Bankruptcy Court and serve on the Debtor and its counsel notice of such Administrative Expense Claim within fourteen (14) days after entry of the Confirmation Date. Such notice of Administrative Expense Claims must include, at a minimum, (i) the name of the Holder of the Claim, (ii) the amount of the Claim, and (iii) the basis of the Claim. Failure to file and serve this notice timely and properly shall result in the Administrative Expense Claim being forever barred and discharged. An Administrative Expense Claim with respect to which notice has been properly filed and served shall become an Allowed Administrative Expense Claim if no objection is filed within thirty (30) days of the filing and service of notice of such Administrative Expense Claim. If an objection is filed within such thirty (30) day period, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent allowed by Final Order of the Bankruptcy Court.

## B. Priority Tax Claims

On the later of the Effective Date or the date within five Business Days after the date a Priority Tax Claim, if any, becomes an Allowed Priority Tax Claim, or, in each such case, as soon as practicable thereafter, such Holder of an Allowed Priority Tax Claim will receive on account of such Claim Cash in an amount equal to the amount of such Allowed Priority Tax Claim, which amount shall be payable out of the Escrow Account; *provided, however*, no Holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Effective Date interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date with respect to or in

connection with such Allowed Priority Tax Claim. Notwithstanding the foregoing, the Holder of an Allowed Priority Tax Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

# ARTICLE III.

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

This Plan is premised on the substantive consolidation of the Plan Parties and their assets with respect to treatment of all Classes of Claims and Interests. All Claims and Interests, except Administrative Expense Claims, Fee Claims, and Priority Tax Claims are placed in the following Classes and afforded the following treatment.

*A.* *Summary*

In connection with the closing of the contemplated Transaction, below is a summary of classification and treatment of classified Claims and Interests. In the event a Transaction is not consummated and the Debtor proceeds with the Alternative Transaction, the classification and treatment of such Claims and Interest may change.

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Impaired | Entitled to Vote |
| 2 | First Lien Secured Claim | Impaired | Entitled to Vote |
| 3 | Other Secured Claims | Impaired | Entitled to Vote |
| 4 | Tax Municipalities Secured Claims | Unimpaired | Not Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Interests | Impaired | Entitled to Vote |
| 7 | Post-Petition Secured Claim | Impaired | Entitled to Vote |
| 8 | Mechanic's Lien Claim | Impaired | Entitled to Vote |
| 9 | Consolidated Administrative Claims | Impaired | Entitled to Vote |
| 10 | Insider Claims | Impaired | Not Entitled to Vote |

*B.* *Classification and Treatment of Claims and Interests*

1. <u>Class 1- Other Priority Claims</u>

   (a) *Classification*: Class 1 consists of the Other Priority Claims against the Plan Parties.

   (b) *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such Other Priority Claim becomes an Allowed Claim, each Holder of such Allowed Claim shall receive, in full and final satisfaction of such Allowed Claim from the Escrow Account Cash equal to the unpaid portion of such Allowed Other Priority Claim; *provided, however*, no Holder of an Allowed Other Priority Claim shall be entitled to any payments on account of any pre-

Effective Date interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date with respect to or in connection with such Claim. Notwithstanding the foregoing, the Holder of an Allowed Other Priority Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c)     *Voting*: Class 1 is an Impaired Class, and the Holders of Other Priority Claim are entitled to vote on the Plan.

2.     <u>Class 2- First Lien Secured Claim</u>

(a)     *Classification*: Class 2 consists of the First Lien Secured Claim against the Debtor and the Debtor Related Entities.

(b)     *Treatment*: On or as soon as reasonably practicable after the Effective Date, in full and final satisfaction of the First Lien Secured Claim, the Holder of such Claim shall receive from the Escrow Account (subject to the discharge or release of any mortgage or other encumbrance) the compromised and agreed amount of $9,850,000; *provided that*, any and all Causes of Action against all guarantors related to the Prepetition Credit Agreement, including any Plan Party and Francesco Rotondo, shall be deemed released. In the event of the Alternative Transaction, (i) the Holder of Allowed First Lien Secured Claim shall recover only with respect to assets of the Debtor and Debtor Related Entities, not assets owned by Amici Trust; and (ii) payment to the First Lien Secured Claim shall be after deduction of the Roswell Carveout. Notwithstanding the foregoing, the Holder of the Allowed First Lien Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c)     *Voting*: Class 2 is an Impaired Class, and the Holder of First Lien Secured Claim is entitled to vote on the Plan.

3.     <u>Class 3- Other Secured Claims</u>

(a)     *Classification*: Class 3 consists of the Holders of Other Secured Claims against the Plan Parties.

(b)     *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such Other Secured Claim becomes an Allowed Claim, each Holder of such Allowed Claim shall receive, in full and final satisfaction of the Allowed Claim, from the Escrow Account (subject to the discharge or release of any mortgage or other encumbrance) Cash equal to 84% of such Allowed Claim; *provided that*, this distribution shall not limit other distribution, if any, under Article III.F. No Holder of an Allowed Other Secured Claim shall be entitled to any payments on account of any pre-Effective Date accrued interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date

with respect to or in connection with such Claim. Notwithstanding the foregoing, the Holder of an Allowed Other Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 3 is an Impaired Class and the Holders of Other Secured Claims are entitled to vote on the Plan.

4.  <u>Class 4— Tax Municipalities Secured Claims</u>

(a) *Classification*: Class 4 consists of the Holders of Tax Municipalities Secured Claims against the Plan Parties.

(b) *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such Tax Municipalities Secured Claim becomes an Allowed Claim, each Holder of such Allowed Claim shall receive, in full and final satisfaction of the Allowed Claim, from the Escrow Account Cash equal to the unpaid portion of such Allowed Tax Municipalities Secured Claim plus interest thereon at a rate determined under applicable non-bankruptcy law. Notwithstanding the foregoing, the Holder of an Allowed Tax Municipalities Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 4 is not an Impaired Class and the Holders of Tax Municipalities Secured Claims are not entitled to vote on the Plan.

5.  <u>Class 5— General Unsecured Claims</u>

(a)   *Classification*: Class 5 consists of the Holders of General Unsecured Claims against the Plan Parties.

(b)   *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such General Unsecured Claim becomes an Allowed Claim, each Holder of such Allowed Claim shall receive, in full and final satisfaction of the Allowed Claim, from the Escrow Account Cash equal to 84% of such Allowed General Unsecured Claim; *provided that,* this distribution shall not limit other distribution, if any, under Article III.F. No Holder of an Allowed General Unsecured Claim shall be entitled to any payments on account of any other amount with respect to or in connection with such Claim. With respect to the Breach of Contract Claim of Diom LLC, the Debtor intends to Cure the prepetition Claim amount as set forth in this Article III.B(5) and assume the applicable Executory Contract in full and final satisfaction of such Claim. Notwithstanding the foregoing, the Holder of an Allowed General Unsecured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c)   *Voting*: Class 5 is an Impaired Class and the Holders of General Unsecured Claims are entitled to vote on the Plan.

6.   Class 6- Interests

(a)   *Classification*: Class 6 consists of all Interests in the Plan Parties.

(b)   *Treatment*: On the Effective Date, all Class 6 Interests shall be deemed canceled and shall be of no further force and effect, whether surrendered for cancellation or otherwise. On, or as soon as reasonably practicable after the Effective Date, each Holder of an allowed Interest shall receive a pro rata share of the Remaining Shares. The terms and provisions of the New Common Stock, and the rights of the holders thereof, shall be described in and otherwise governed by the applicable Organizational Document and/or any investors rights agreement or similar agreement, as applicable.

(c)   *Voting*: Class 6 is an Impaired Class and the Holders of Interests are entitled to vote on the Plan.

7.   Class 7— Post-Petition Secured Claim

(a)   *Classification*: Class 7 consists of the Post-Petition Secured Claim of Christian Bistany.

(b)   *Treatment*: On, or as soon as reasonably practicable after the Effective Date, the Holder of this Claim shall receive, in full and final satisfaction of such Post-Petition Secured Claim, from the Escrow Account (subject to the discharge or release of the secured claim) Cash in an amount equal to 84% of the $137,500 loan; *provided that,* this distribution shall not limit other

distribution, if any, under Article III.F. The Holder of the Post-Petition Secured Claim shall not be entitled to any payments on account of any other amount with respect to or in connection with such Claim. Notwithstanding the foregoing, the Holder of such Post-Petition Secured Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 7 is an Impaired Class and the Holder of Post-Petition Secured Claim is entitled to vote on the Plan.

8. <u>Class 8— Mechanic's Lien Claim</u>

(a) *Classification*: Class 8 consists of the Mechanic's Lien Claim of Aho Construction.

(b) *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such Mechanic's Lien Claim becomes an Allowed Claim, the Holder of such Claim shall receive, in full and final satisfaction of the Allowed Claim, from the Escrow Account (subject to the discharge or release of its lien) Cash equal to such Allowed Mechanic's Lien Claim. No Holder of an Allowed Mechanic's Lien Claim shall be entitled to any payments on account of any pre-Effective Date accrued interest, fees, other charges and/or penalty, as applicable, arising after the Petition Date with respect to or in connection with such Claim. With respect to the Breach of Contract Claim of this Claim Holder, the Debtor intends to Cure the prepetition Claim amount as set forth in this Article III.B(8) and assume the applicable Executory Contract in full and final satisfaction of such Claim. Notwithstanding the foregoing, the Holder of Mechanic's Lien Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 8 is an Impaired Class and the Holder of Mechanic's Lien Claim is entitled to vote on the Plan.

9. <u>Class 9— Consolidated Administrative Claims</u>

(a) *Classification*: Class 9 consists of the Holders of Consolidated Administrative Claims.

(b) *Treatment*: On, or as soon as reasonably practicable after, the latest of (a) the Effective Date, or (b) the date within five Business Days after the date such Consolidated Administrative Claim becomes an Allowed Claim, each Holder of such Allowed Claim shall receive, in full and final satisfaction of such Claim, from the Escrow Account Cash equal to 84% of such Allowed Consolidated Administrative Claim; *provided, however*, no Holder of an Allowed Consolidated Administrative Claim shall be entitled to any payments on account of any other amount with respect to or in connection with such Allowed Claim. Notwithstanding the foregoing, the Holder of an

Allowed Consolidated Administrative Claim may receive such other less favorable treatment as may be agreed upon by such Holder and the Debtor.

(c) *Voting*: Class 9 is an Impaired Class and the Holders of Consolidated Administrative Claims are entitled to vote on the Plan.

10. Class 10- Insider Claims

(a) *Classification*: Class 10 consists of the Claims of the following Insiders: Francesco Rotondo, Marco Rotondo, and Laurie Delucia.

(b) *Treatment*: Holders of Insider Claims shall receive no distribution under Plan.

(c) *Voting*: Class 10 is an Impaired Class. Holders of Insider Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

## C. *Intercompany Claims*

All Intercompany Claims, if any, will be cancelled as of the Effective Date, and Holders thereof will not receive a distribution under the Plan in respect of such Claims.

Pursuant to the Jurisdiction Agreements and the Stipulation, the Plan incorporates the substantive consolidation of the Plan Parties and their assets. Pursuant to the Plan, and in consideration for the distribution and other benefits under the Plan, upon the Effective Date, all Intercompany Claims shall be extinguished. All parties who have held, hold or may hold Claims or Interests in any or all of the Plan Parties are permanently enjoined from asserting or continuing in any manner any action related to the enforcement of the Intercompany Claims.

## D. *Special Provisions Regarding Subordinated Claims*

All Subordinated Claims shall be deemed Disputed Claims and to the extent Allowed by the Bankruptcy Court shall be subordinated to payment in full of all other Allowed Claims.

## E. *Special Provisions Regarding the Treatment of Allowed Secondary Liability Claims*

The classification and treatment of Allowed Claims under the Plan take into consideration all Allowed Secondary Liability Claims. On the Effective Date, Holders of Allowed Secondary Liability Claims will be entitled to only one distribution in respect of such underlying Allowed Claim from the substantively consolidated Plan Parties. No multiple recovery on account of any Allowed Secondary Liability Claim will be provided or permitted.

## F. *Additional Recoveries/ Plan Funding Balance*

Any balance or unused amount of the Plan Funding (including any savings from any reduction in Fee Claims and other Claims) and any collection related to the Judgments shall be allocated as follows: (i) FIRST, payment of any unpaid Fee Claims, (ii) SECOND, payment in full

of other post-petition Claims, (iii) THIRD, pro rata distribution to Holders of Other Secured Claims, and (iv) FOURTH, pro rata distribution to General Unsecured Claims.

G.   *Committee Lawsuit*

The Committee Lawsuit shall be deemed dismissed upon the distribution of the 84% to Allowed Claims of the General Unsecured Creditors as set forth in Article III.B(5).

H.   *Estimated Claims*

With respect to the proposed distributions in this Article III, the Debtor has estimated the Claims. The Debtor does not expect any additional postpetition administrative Claims to be filed in the Bankruptcy Case. To the extent the actual Claims exceed the estimated Claims, the Debtor reserves its right to modify the Plan with the consent of affected parties or order of the Bankruptcy Court.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

A.   *Each Impaired Class Entitled to Vote*

Each Impaired Class that is to receive a distribution under the Plan shall be entitled to vote separately to accept or reject the Plan. Each such Impaired Class shall receive a Ballot which will be used to cast its vote in respect to the Plan.

B.   *Acceptance by Impaired Classes*

A Class of Impaired Claims shall have accepted the Plan if the Plan is accepted by Holders of Claims that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims of such Class that have voted to accept or reject the Plan (not counting the vote of any Holder designated under section 1126(e) of the Bankruptcy Code).

C.   *Classes Entitled to Vote*

Classes 1, 2 3, 5, 6, 7, 8, and 9 are Impaired Classes under the Plan that are entitled to vote to accept or reject the Plan.

D.   *Non-Consensual Confirmation*

The Debtor reserves the right to seek Confirmation of the Plan under section 1129(b) of the Bankruptcy Code, to the extent applicable (including with respect to any further amended Plan contemplating the Alternative Transaction). The Debtor reserves the right to further alter, amend, modify, revoke or withdraw the Plan or any Plan exhibit, including to amend or modify it to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Proposed Transaction and Alternative Transaction*

Lower Falls is committed to fund the USA Springs Project with a total loan of $55,000,000 to be collateralized by all or substantially all assets of the Plan Parties. A summary of the material terms related to this Lower Falls transaction is set forth as follows:

| General Terms/ Transaction | Subject to the satisfaction of certain conditions, Lower Falls will loan $55,000,000.00 to the Debtor. |
|---|---|
| Interest Payments | Interest rate is fixed at 6.50%.<br><br>Interest will be payable monthly on the 10th day of each month beginning March 1, 2012. |
| Loan Term/ Prepayment | 5 years; the loan may be prepaid in whole or in part at any time with no penalty. |
| Equity | Lender shall receive a 20% equity interest in the Reorganized Debtor |
| Loan/Administration/ Brokerage Fees | Two (2) points due and payable as loan fee at the closing out of loan proceeds.<br><br>0.1% of each loan draw as administration fee.<br><br>Certain other brokerage fee arrangements, which include issuance of equity interest in connection with the transaction. |
| Closing Date | The closing date shall be on or before October 29, 2010. |

Pursuant to the WTB LOI, subject to execution of applicable transaction agreement(s), WTB is committed to fund the USA Springs Project with a total loan/ investment of up to $75,000,000 to be collateralized by all or substantially all assets of the Plan Parties. A summary of the proposed terms of this WTB transaction is set forth below:

| General Terms/ Transaction | Subject to the satisfaction of certain conditions, WTB will loan an initial $55,000,000 with a guaranteed $20,000,000 contingency fund for a total loan/ investment of up to $75,000,000. |
|---|---|
| Interest Payments | Interest rate is fixed at 4.50% with by-annual payments in |

| | January 1st and July 1st of each year. There shall be a 12 month grace period from the time of funding before any payments are due. |
|---|---|
| *Loan Term/ Prepayment* | 5 years; the loan may be prepaid in whole or in part at any time with no penalty. |
| *Equity* | Lender shall receive a 55% equity interest in the Reorganized Debtor initially. Upon full satisfaction of the loan, the aforesaid 55% shall be reduced to 30%. |
| *Loan/Administration/ Brokerage Fees* | [None] |
| *Closing Date* | The closing date shall be within 45 days after execution of the transaction agreement(s) that the WTB LOI is subject to. |

The Debtor expects to receive other third party letter(s) of interest after the filing of this Plan. Notice and summary of any such other potential transaction acceptable to the Debtor will be filed with the Bankruptcy Court before receipt by the Debtor of the Plan Funding and Closing of a Transaction.

Implementation of the Plan will be from Closing of a Transaction by October 29, 2010 (or a later date as may be acceptable to the Debtor). The Plan Funding will be used to pay Creditors in conformity with the Plan. The net proceeds from the Transaction (after applicable loan and closing fees) shall be used to complete the construction of the USA Springs Project and to fund the business operations.

Entry of the Confirmation Order will constitute the approval, pursuant to sections 105(a), 363 and 364 of the Bankruptcy Code, effective as of the Effective Date, of the applicable Transaction. The appropriate notice and the Plan Supplement will be filed with the Bankruptcy Court within three (3) Business Days of the Closing.

In the event of no timely Closing (unless the Plan Funding is in escrow), the Debtor (i) will enter into any other alternative transaction available at the time and acceptable to the Committee and/or Roswell, including a stalking horse bid for the sale, pursuant to section 363 of the Bankruptcy Code, of substantially all assets of the Plan Parties, and/or (ii) file appropriate sale pleadings and/or liquidating chapter 11 plan (the "*Alternative Transaction*"). Such sale pleadings and/or amended plan documents shall be filed with the Bankruptcy Court by December 15, 2010. Under such Alternative Transaction, Allowed Claims may not get paid in full. Therefore, the Debtor reserves its rights to amend the Plan to re-solicit votes of Creditors and Interests, as may be required.

B.      *Substantive Consolidation*

The Plan is predicated on the substantive consolidation of the Plan Parties and their assets, subject to the Effective Date, as set forth more fully in Article X.

C.      *Corporate Existence and Vesting of Assets in Reorganized Debtor*

The Reorganized Debtor will exist after the Effective Date as a corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law. Subsequent dissolution or non-dissolution of the Related Entities shall be at the Debtor's or Reorganized Debtor's discretion, as may be needed for the ultimate transaction.

Except as otherwise provided in this Plan, as of the Effective Date, all property of the Estate and of the Plan Parties, including title to real estate assets, by transfer or otherwise, will vest in Reorganized Debtor free and clear of Claims, Interests and liens and security interests of any sort. On and after the Effective Date, Reorganized Debtor may operate its business and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, Reorganized Debtor may pay the charges that it incurs after the Effective Date for professionals' fees, disbursements, expenses or related support services (including fees relating to the preparation of Professional fee applications) without application to the Bankruptcy Court.

D.      *Issuance of New Common Stock and Transmission of Instruments*

On the Effective Date, Reorganized Debtor shall be authorized to (a) issue the New Common Stock in accordance with the provisions of this Plan without further act or action under applicable law, regulation, order, or rule; (b) execute, any new Organizational Document, investors rights agreement or similar agreement, as applicable; and (c) file with applicable governmental authorities any necessary transaction document.

E.      *Cancellation and Surrender of Existing Securities and Agreements*

On the Effective Date, except as otherwise provided for herein, all exiting notes, stock certificates, instruments, and any other documents or certificates evidencing Interests in any Plan Party or related indebtedness or obligation of a Plan Party shall be cancelled and the obligations of the Plan Parties thereunder or in any way related thereto shall be discharged.

F.      *Preservation of Rights of Action; Settlement of Causes of Action*

Except as otherwise provided in this Plan, the Confirmation Order, or any previous order of this Court, the Reorganized Debtor shall, under 1123(b) of the Code retain and have the exclusive right, in its sole discretion, to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits, and proceedings, whether in law or equity, whether known or unknown, that the Plan Parties may hold against any Person (including any potential claims against third parties for interference with the USA Springs Project). Reorganized Debtor or its successor(s) may pursue such retained claims, rights, Causes of Action, suits, or proceedings as appropriate, in accordance with the best interests of Reorganized Debtor or its successor(s).

G.      *Certificate of Incorporation and By-Laws*

The applicable Organizational Document shall expressly authorize the issuance of the New Common Stock contemplated herein. On the Effective Date, the by-laws of Reorganized Debtor shall be deemed to be fully effective. Any new certificate of incorporation shall be in accordance with the Transaction Documents and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities by Reorganized Debtor for a period of one year following the Effective Date.

*H.*     *Directors and Officers; Post-confirmation Management*

On the Effective Date, the operation of Reorganized Debtor shall become the general responsibility of the Board of Directors of Reorganized Debtor, subject to, and in accordance with, any applicable Organizational Document and the Transaction Documents. The number of directors on Reorganized Debtor's Board of Directors shall initially be as set forth in the Transaction Documents.

It is anticipated that, post-confirmation, the Board of Directors will include Francesco Rotondo ("Mr. Rotondo") (current president and Director), and others as approved by the Lender and Mr. Rotondo. On the Effective Date, the Board of Directors of Reorganized Debtor shall be deemed elected pursuant to the Confirmation Order, but shall not take office and shall not be deemed to be elected until the occurrence of the Effective Date.

In addition to the Plan Funding amount, Lower Falls has agreed (and other Lenders may agree) to fund an advance between $300,000 to $500,000 for the continued services of Francesco Rotondo and/or other key employees at the discretion of the Lender.

*I.*     *Release of Liens*

Except as otherwise provided in the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III, all interests, mortgages, deeds of trust, liens or other security interests against the property of the Estate and any Plan Party will be fully released and discharged.

*J.*     *Exemption from Certain Transfer Taxes*

Pursuant to section 1146(a) of the Bankruptcy Code: (i) the issuance, transfer or exchange of any securities, instruments or documents; (ii) the creation of any other lien, mortgage, deed of trust or other security interest; or (iii) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of or in connection with the Plan or the sale or assignment of any assets of the Debtor and any deeds (including deeds of real estate assets held by certain Plan Parties), bills of sale or assignments executed in connection with the Plan or the Confirmation Order, shall not be subject to any stamp tax, transfer tax, intangible tax, recording fee, or similar tax, charge or expense to the fullest extent provided for or allowable under section 1146(a) of the Bankruptcy Code, including without limitation any confirmatory deeds by which real property is transferred by any Related Entity to the Debtor.

*K.*     *Implementation; Effectuating Documents; Further Transactions*

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided for under the Plan and the Transaction Documents involving the structure, corporate or otherwise, of the Plan Parties will be deemed authorized and approved without any requirement of further action by the Plan Parties, the Plan Parties' shareholders, boards of directors or trustees, as applicable.

Pursuant to the Confirmation Order and upon Confirmation of this Plan, (i) the Plan Parties or Reorganized Debtor, as applicable, shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan; (ii) the Plan Parties or Reorganized Debtor, as the case may be, may execute such documents and take such further actions as necessary to effectuate the transactions provided for in this Plan, without the need for any additional approvals, authorizations or consents; and (iii) the chairman of the Board of Directors, president, trustee or any other appropriate officer of each Plan Parties or Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such other agreements and documents as may be necessary or appropriate to effectuate or further evidence the terms and conditions of this Plan and the other agreements referred to herein.

# ARTICLE VI.

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Confirmation Date, all Executory Contracts or unexpired leases, if any, of the Plan Parties shall be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those Executory Contracts and unexpired leases that (a) have been rejected by order of the Bankruptcy Court, (b) are the subject of a motion to reject pending on the Confirmation Date, (c) are identified on a list to be filed with the Bankruptcy Court on or before the Confirmation Date  as to be rejected, or (d) are rejected pursuant to the terms of the Plan.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections.

Each such Executory Contract and unexpired lease that is assumed shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or unexpired lease, and (b) all Executory Contracts or unexpired leases appurtenant to the USA Springs Project, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements, or other agreements, and any other interests in real estate or rights *in rem* related to such premises.

B.      *Payments Related to Assumption of Contracts and Leases*

Any monetary amounts by which any Executory Contract or unexpired lease to be assumed under the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the

option of the Debtor, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or unexpired lease to be assumed, or (c) any other matter pertaining to assumption, Cure shall occur, at the Debtor's or Reorganized Debtor's option, following the entry of a Final Order of the Bankruptcy Court resolving the dispute and approving the assumption and/or assumption.

C.     *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Any Claim for damages based upon the rejection of any Executory Contract or unexpired lease shall be a Disputed Claim and to the extent Allowed by the Bankruptcy Court, such Claims shall be classified as a Class 5 General Unsecured Claim and may be objected to in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The failure to file a Claim for damages based upon the rejection of an Executory Contract or unexpired lease within forty-five (45) days following the Effective Date shall forever bar such a Claim.

D.     *Contracts Entered Into After the Petition Date*

Contracts entered into after the Petition Date, if any, by any Plan Party, including any Executory Contracts and unexpired leases assumed by the Debtor, will be performed by such Plan Party or Reorganized Debtor, as the case may be, in accordance with the terms and conditions of such contracts in the ordinary course of its business. Such contracts and other obligations (including any assumed Executory Contracts and unexpired leases) will survive and remain unaffected by entry of the Confirmation Order, unless provided otherwise in such contract.

## ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

A.     *Distributions for Claims Allowed as of the Effective Date*

The Reorganized Debtor will make all distributions of Cash, New Common Stock, and other instruments or documents required under the Plan. Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, all distributions with respect to all Allowed Claims (other than Fee Claims) shall be made from the Escrow Account, as set forth in the Plan. Except as otherwise provided in this Article VII, distributions to be made on the Effective Date to Holders of Claims that are Allowed as of the Effective Date will be deemed made on the Effective Date or as promptly thereafter as practicable. Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made in accordance with the provisions of Article VIII of this Plan

B.     *Interest on Claims*

Except as otherwise provided herein, or as required under applicable law, Holders of Claims shall not be entitled to interest payments on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

C.     *Place of Delivery of Distributions*

Distributions to holders of Allowed Claims shall be made by Reorganized Debtor (a) at the addresses set forth on the proofs of Claim filed by such Holders (or the last known address of such Holders if no proof of Claim is filed or if the Debtor has been notified of a change of address); (b) at the address set forth in any written notices of address changes delivered to Reorganized Debtor after the date of any related proof of Claim, or (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and Reorganized Debtor has not received a written notice of a change of address.

D.     *Undeliverable Distributions*

1.     <u>Holding of Undeliverable Distributions</u>.     If any distribution to a Holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable, no further distributions shall be made to such Holder unless and until Reorganized Debtor is notified in writing of such Holder's then-current address.  Undeliverable distributions shall remain in the possession of Reorganized Debtor pursuant to this Article VII.D until such time as a distribution becomes deliverable.

2.     <u>Failure to Claim Undeliverable Distributions</u>.  Any Holder of an Allowed Claim or Interest that does not assert a Claim for an undeliverable distribution within 90 days after the later of (a) the Effective Date or (b) the date such claim became an Allowed Claim shall have its claim for such undeliverable distribution discharged and such Holder or successor to such Holder with respect to such property shall be forever barred from asserting any such Claim against Reorganized Debtor, the Plan Parties or their properties.  Any Cash held for distribution on account of such Claims shall be property of Reorganized Debtor, free of any restrictions thereon and any New Common Stock held for distribution on account of any such Claims or Interests shall be canceled and of no further force or effect.

3.     <u>No Duty to Locate</u>.  Nothing contained in the Plan shall require the Debtor or Reorganized Debtor to attempt to locate any holder of an Allowed Claim or Interest beyond a normal general search, including use of the internet.

E.     *Compliance with Tax Requirements*

In connection with this Plan and all distributions hereunder, to the extent applicable, Reorganized Debtor will comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. Reorganized Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.  Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim or Interest that is to receive a distribution of New Common Stock pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

F.     *Setoffs*

Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Plan Parties may have against the Holder of such Claim; *provided*,

*however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Parties of any such claim that the Plan Parties may have against the Holder of such Claim.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.    *Claims Objection and Resolution*

After the Confirmation Date, the Reorganized Debtor shall have the exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims or Interests. From and after the Effective Date, Reorganized Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. Reorganized Debtor may object to a Claim or Interest by the Claims Objection Bar Date. Nothing herein shall be deemed to be a waiver of any rights of a party of interest with standing to object to Fee Claims and objectionable post-petition Claims.

B.    *Claims Allowance*

The Debtor or Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Reorganized Debtor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including to the extent possible during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

C.    *Payments and Distributions on Disputed Claims*

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim has become an Allowed Claim.

D.    *Voting Rights of Holders of Disputed Claims*

Pursuant to Bankruptcy Rule 3018(a), to the extent it becomes applicable, a Disputed Claim will not be counted for purposes of voting on this Plan to the extent it is a Disputed Claim, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting

purposes shall be without prejudice to the holders of such Disputed Claim seeking to have such Disputed Claim become an Allowed Claim for purposes of distribution under this Plan.

# ARTICLE IX.

## SUBSTANTIVE CONSOLIDATION

### A. *Consolidation of the Related Entities With the Debtor's Estate*

Pursuant to the Stipulation and the Jurisdiction Agreements, the Plan contemplates and is predicated upon entry of the Confirmation Order effecting the substantive consolidation of the Plan Parties and their assets for the purposes of all actions associated with confirmation and consummation of the Plan. On the Confirmation Date, subject to the occurrence of the Effective Date: (a) all inter-company Claims by and among the Plan Parties shall be eliminated and extinguished; (b) all assets and liabilities of the Plan Parties shall be treated as though they were merged; (c) all prepetition cross-corporate guarantees of the Plan Parties, if any, shall be eliminated; (d) any obligation of any Plan Party and all guarantees thereof executed by one or more of the Plan Parties shall be deemed to be one obligation of the consolidated Plan Parties; (e) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Plan Parties; (f) each and every Claim filed in the Chapter 11 Case shall be deemed filed against the consolidated Plan Parties and shall be deemed a single obligation of all of the Plan Parties under the Plan on and after the Confirmation Date; (g) all duplicative claims (identical in both amount and subject matter) filed against more than one of the Plan Parties will be automatically expunged so that only one Claim survives against the consolidated Plan Parties but in no way shall be deemed Allowed solely by reason of this section of the Plan; and (h) the consolidated Plan Parties will be deemed, for purposes of determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, so that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to a particular Plan Party may be offset against claims against such Plan Party or another Plan Party. On the Confirmation Date, and subject to the occurrence of the Effective Date, and in accordance with the terms of the Plan and the consolidation of the assets and liabilities of the Plan Parties, all Claims based upon guarantees of collection, payment or performance made by the Plan Parties as to the obligations of another Plan Party or of any other Person shall be discharged, released and of no further force and effect. The foregoing shall be effective without necessity of any merger or like transaction under applicable non-bankruptcy laws

### B. *Substantive Consolidation Order*

The Plan will serve as a motion seeking entry of an order substantively consolidating the Plan Parties and their assets, as set forth herein. Unless an objection to substantive consolidation is made in writing by any Creditor affected by the Plan as herein provided on or before the Plan Objection Deadline, an order substantively consolidating the Plan Parties and their assets, including as part of the Confirmation Order may be entered by the Bankruptcy Court. In the event any such objections are timely filed, a hearing with respect thereto will be scheduled by the Bankruptcy Court, which hearing may coincide with the Confirmation Hearing.

### C. *Reservation of Rights*

The Debtor reserves the right at any time up to the conclusion of the Confirmation Hearing to withdraw its request for substantive consolidation, to seek Confirmation of the Plan as if there were no substantive consolidation, and to seek Confirmation of the Plan with respect to one or more Plan Parties even if Confirmation with respect to other Plan Parties is denied.

# ARTICLE X.

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A. *Conditions Precedent to Confirmation*

The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Article X.C of this Plan:

1. An order shall have been entered finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code.

2. The Confirmation Order in form and substance reasonably acceptable to the Debtor shall have been entered approving all provisions, terms and conditions of this Plan.

3. The Substantive Consolidation Order in form and substance reasonably acceptable to the Debtor shall have been entered.

B. *Conditions Precedent to Consummation*

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Article X.C of this Plan:

1. The Confirmation Date shall have occurred and the Confirmation Order shall have been entered.

2. The Confirmation Order shall have become a Final Order (unless any applicable stay is waived by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(e).

3. All actions, documents and agreements necessary to implement the Plan, including without limitation, such documents relating to the Transaction, shall have been effected or executed and, as necessary, filed with the appropriate governmental authorities. All conditions precedent to such documents and agreements shall have been satisfied or been waived by the Lender.

4. All conditions precedent to the obligations of the Lender pursuant to the Transaction Documents shall have been satisfied or waived by the Lender.

5. The Plan Funding payable by Lender shall have been received and deposited in the Escrow Account.

6. The Closing of the Transaction shall have occurred.

*C.    Waiver of Conditions*

Except where prohibited by law, each of the conditions set forth in Article X.A and B of this Plan may be waived in whole or in part by the Debtor without any other notice to parties in interest or the Bankruptcy Court and without hearing.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code and in compliance with LBR 3020-1, the Bankruptcy Court shall retain post-Effective Date jurisdiction over all matters involving the Plan Parties and arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Hear and determine objections to Claims, including with respect to allowance or priority of such Claims;

(b)    Consider and rule upon requests for compensation, including under sections 330, 331, and 503(b) of the Bankruptcy Code; *provided, however*, from and after the Effective Date, the payment of the fees and expenses of Professionals retained by Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c)    Hear and determine any dispute arising under the Plan or the Confirmation Order; implementation of the Plan and Confirmation Order and execution, implementation or enforcement of any necessary documents thereunder; and any requests to amend, modify or correct the Plan or Confirmation Order; *provided that* such matters are brought before the Bankruptcy Court prior to the point of substantial consummation;

(d)    Grant extensions of any deadlines set forth in the Confirmation Order, as may be appropriate; and

(e)    Enforce all discharge provisions, injunctions, releases, and exculpations under the Plan, as applicable;

To the extent necessary, the Debtor shall show specific grounds at the Confirmation Hearing for additional retained jurisdiction not specifically provided for under LBR 3020-1, including as provided below:

(a)    Consider any modifications of the Plan and the Confirmation Order;

(b)    Hear and determine matters concerning transfer of property of the Debtor to the Reorganized Debtor free and clear of all liens and encumbrances;

(c)    Hear and determine matters concerning state, local, and federal taxes, including in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(d)    Hear and determine any adversary proceedings, motions, application or other pleadings related to matters that are core proceedings, including assumption or rejection of executory contracts, amount of rejection damages, assumption or cure amounts;

(e)    Enter a final decree closing the Chapter 11 Case;

(f)    Hear and determine the Causes of Action of the Debtor or any other Plan Party; and

(g)    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation, consummation, or enforcement of the Plan, the Confirmation Order, the Transaction, or completion of the USA Springs Project.

In addition to the foregoing retention of jurisdiction, the Debtor may seek to conditionally reserve in the Confirmation Order jurisdiction with regard to the certain other matters, as may be applicable or necessary, by filing a motion on notice requesting such additional retention of jurisdiction pursuant to LBR 3020-1(b).

# ARTICLE XII.

# EFFECT OF CONFIRMATION

A.    *Binding Effect*

On the Effective Date, the provisions of this Plan shall be binding upon and inure to the benefit of the Plan Parties, Reorganized Debtor, all current and former Holders of Claims against and Interests in the Plan Parties and their respective successors and assigns, and all other parties-in-interest in the Chapter 11 Case and Persons affected by this Plan.

B.    *Discharge of Plan Parties*

All consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against or Interests in the Plan Parties of any nature whatsoever, or against any of the Plan Parties' assets or properties. Subject to the occurrence of the Effective Date, except as otherwise expressly provided in this Plan or the Confirmation Order, entry of the Confirmation Order shall act as a discharge under section 1141(d)(1)(A) of the Bankruptcy Code from and of all Claims against, liens on, and Interests in each of the Plan Parties, their assets, and their properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim or proof of Interest therefor was filed, whether the Claim or Interest is Allowed, or whether the holder thereof votes to accept this Plan or is entitled to receive a distribution hereunder. Upon entry of the Confirmation Order, and subject to the occurrence of the Effective Date, any holder of such a discharged Claim or Interest shall be precluded from asserting against the Plan Parties and Reorganized Debtor or any of their assets or properties any other or further Claim or Interest based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the date of entry of the Confirmation Order. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Plan Parties, subject to the occurrence of the Effective Date.

## C.    *Injunction*

Pursuant to section 524 of the Bankruptcy Code, the discharge provided by Article XII.B of this Plan and section 1141 of the Bankruptcy Code shall, upon the Effective Date, act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover the Claims and Interests discharged thereby.   Except as otherwise expressly provided in this Plan or the Confirmation Order, all Persons which have held, hold, or may hold Claims against or Interests in the Plan Parties will be permanently enjoined, on and after the Confirmation Date, subject to the occurrence of the Effective Date, from (a) commencing or containing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Plan Parties on account of any such Claim or Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Plan Parties or against the property or interests in property of the Plan Parties on account of any such Claim or Interest, and (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Plan Parties or against the property or interests in property of the Plan Parties on account of any such Claim or Interest.  The foregoing injunction will extend to successors of the Plan Parties (including, but not limited to, Reorganized Debtor) and their respective properties and interests in property.

## D.    *Releases*

Effective on the occurrence of the Effective Date, to the fullest extent permitted by applicable law, the Plan Parties and Reorganized Debtor shall be presumed conclusively to have released the Releasees and their respective property, from any and all claims, obligations, rights, Causes of Action, demands, suits, proceedings, and liabilities, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, based in whole or in part on any act or omission transaction, state of facts, circumstances or other occurrences taking place prior to or on the Effective Date arising from or related in any way to the Plan Parties, the Estate, or the Reorganized Debtor, including, without limitation, those that any of the Plan Parties or the Reorganized Debtor would have been legally entitled to assert or that any Holder of a Claim or Interest or other Person would have been legally entitled to assert for or on behalf of any of the Plan Parties or the Estate or the Reorganized Debtor and further including those in any way related to the Chapter 11 Case or the Plan; *provided, however*, the foregoing provisions of this Article XII.D shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; and *provided, further*, (i) the foregoing release shall not operate to waive or release from any Causes of Action expressly set forth in and preserved by the Plan or Plan Supplement, and (ii) the Plan Parties and Reorganized Debtor shall have the right to pursue such rights of action, including the rights under section 502(d) of the Bankruptcy Code, as a defensive measure, including for purposes of setoff against distributions, if any, due to a holder of a Claim or Interest pursuant to this Plan, and such rights shall be exercised exclusively by Reorganized Debtor.

## E.    *Exculpation*

Upon the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Chapter 11 Case, the formulating, negotiating, preparing, disseminating, implementing, administering the Plan, or otherwise, the Plan Supplement, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Plan Parties or confirming or consummating the Plan; *provided, however,* that the foregoing provisions of this Article XII.E shall have no effect on the liability of any Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.      *Payment of Statutory Fees*

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing or otherwise, shall be paid on or before the Effective Date.  All such fees that arise after the Effective Date but before the closing of the Chapter 11 Case shall be paid by Reorganized Debtor.

B.      *Severability of Plan Provisions*

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

C.      *Successors and Assigns*

The rights, benefits and obligations of any Person named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

D.      *Waiver of Enforcement of Subordination*

All Claims against and Interests in the Plan Parties and all rights and claims between or among Holders of Claims and Interests relating in any manner whatsoever to Claims against and Interest in the Plan Parties, based on claimed subordination rights (if any), shall be deemed satisfied by the distributions under the Plan to Holders of Claims and Interests having such subordination

rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Effective Date, and all actions related to the enforcement of such subordination rights shall be permanently enjoined. Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim or Interest shall have and receive the benefit of the distributions in the manner set forth in the Plan.

E.    *Modification and Amendment of Plan Documents*

The Debtor may further alter, amend, or modify the Plan, related Disclosure Statement, and Plan Supplement, including exhibits or schedules thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date, including with respect to the Alternative Transaction, as applicable, as set forth in Article V.A.

After the entry of the Confirmation Order but before the Effective Date, the Debtor may, without approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, insofar as it does not materially adversely affect the interest of Holders of Claims and Interests, correct any defect, omission or inconsistencies in this Plan, related Plan documents in such manner and to such extent as may be necessary to expedite the execution of this Plan.

After the entry of the Confirmation Order and the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistencies in the Plan and related Plan documents, or the Confirmation Order in such manner as may be necessary to carry out the purposes and provisions of the Plan.

F.    *Dissolution of Committee*

On the Effective Date, the Committee shall dissolve and its respective members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to the Chapter 11 Case; *provided, however*, that the Committee and its Professionals, as applicable, shall not be dissolved with respect to (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code, and (ii) the Committee Lawsuit subject to Article III.G.

G.    *Revocation, Withdrawal, or Non-Consummation*

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file subsequent Chapter 11 plan(s). If the Debtor revokes or withdraws the Plan, or if Confirmation or Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (c) nothing contained in the Plan and no acts taken in preparation for Consummation of the Plan shall: (i) constitute or be deemed to constitute a waiver or release of any Claim by or against, or any Interests in any Plan Party or any other Person; (ii) prejudice in any manner the rights of any Plan Party or any other Person in any further proceedings involving a Plan Party; or (iii) constitute an admission of any sort by any Plan Party or any other Person.

## H. Exemption From Registration; Section 1145 of the Bankruptcy Code

In connection with the consummation of the Plan, the Plan Parties will rely on section 1145 of the Bankruptcy Code to the extent it is applicable, to exempt the issuance of the New Common Stock from the registration requirements of the Securities Act of 1933 and of any state securities or "blue sky" laws. Section 1145 of the Bankruptcy Code exempts from registration the distribution of a debtor's securities under a Chapter 11 plan if such securities are offered or sold in exchange, or primarily in exchange, for a claim against, or equity interest in, or a claim for an administrative expense in a case concerning, such debtor.

## I. Notices

Any notice, request, or demand required or permitted to be made or provided to or upon a Plan Party or Reorganized Debtor under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> USA Springs, Inc.
> 155 Old Turnpike Road
> Nottingham, NH 03290
> Attn: Francesco Rotondo
>
> with copies to:
>
> Alan L. Braunstein, Esq.
> Riemer & Braunstein LLP
> Three Center Plaza
> Boston, MA 02108
> (617) 523-9000
> abraunstein@riemerlaw.com
>
> and
>
> Bruce A. Harwood, Esq.
> Sheehan Phinney Bass + Green P.A.
> 1000 Elm Street
> P.O. Box 3701
> Manchester, NH 03105-3701
> (603) 627-8139
> bharwood@sheehan.com

## J. Term of Injunctions or Stays

Except as otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or

otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

## K.    *Inconsistencies*

If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan control.

*DEBTOR*:

USA SPRINGS, INC., a Delaware corporation

By: _____

  Name: Francesco Rotondo
  Title: President

*DEBTOR RELATED ENTITIES:*

USA SPRINGS, INC.,
a New Hampshire corporation

By: _____
Name: Francesco Rotondo
Title: President


GARRISON PLACE REAL ESTATE
INVESTMENT TRUST

By: _____
      Francesco Rotondo, Trustee


SWEET REVIEW REALTY TRUST

By: _____
      Francesco Rotondo, Trustee


JUST CAUSE REALTY TRUST

By: _____
      Francesco Rotondo, Trustee

*RELATED ENTITY:*

AMICI REAL ESTATE TRUST

By: _Ralph Faiella Jr._
Ralph Faiella, Jr., Trustee