UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>USA SPRINGS, INC.,<br>                     Debtor.[1] | Case No. 08-11816 (JMD)<br><br>Chapter 11 |

Hearing Date: June 29, 2011
Hearing Time: 10:30 a.m.

### AMENDED MOTION FOR ORDER (I) APPROVING CERTAIN INVESTOR AGREEMENT AND COMMITMENT DOCUMENTS, (II) AUTHORIZING PAYMENT OF SUCCESS FEE TO THE INVESTOR, AND (III) GRANTING CONTINGENT CARVE-OUT LIEN AND SUBORDINATED ADMINISTRATIVE EXPENSE CLAIM TO THE INVESTOR

USA Springs, Inc., a Delaware corporation, as a debtor and debtor-in-possession (the "Debtor"), respectfully submits this amended motion (the "Motion") seeking an order (A) approving (i) certain investor agreement (the "Investor Agreement") with an insider party investor (the "Investor")[2] with respect to the Transaction (as defined below) with Malom Group AG, a Switzerland Corporation ("Malom"), (ii) the funding commitment, dated as of June 20, 2011 from Malom (the "Funding Commitment"), and (iii) any other ancillary agreement or document with Malom with respect to the Funding Commitment to which the Debtor is a party (the "Other Documents," collectively with the Funding Commitment, the "Commitment Documents"); (B) authorizing payment of the Success Fee (as defined below) to the Investor; and (C) granting a contingent Carve-Out Lien and Subordinated Administrative Claim (both as

---

[1] The Debtor related entities are: USA Springs, Inc., a New Hampshire corporation; Garrison Place Real Estate Investment Trust; Just Cause Realty Trust; and Sweet Review Realty Trust.

[2] For reasons that the Debtor and Malom can provide at the hearing, Malom has requested that any Investor name and contact information remain confidential. Such information has been disclosed to counsel to relevant parties and will be disclosed to the Court to the extent required. The Debtor discloses that the Investor is a director and minority shareholder of the Debtor, and has a junior mortgage against asset(s) of the Debtor.

defined below), as applicable, to the Investor. Before the filing of this Motion, the Debtor has sent drafts of the Motion to the following parties: the United States Trustee; counsel to Roswell Commercial Mortgage, LLC ("Roswell"); counsel for the official committee of unsecured creditors (the "Committee"); counsel to Town of Nottingham; and counsel to Aho Construction, Inc. ("Aho"). The Debtor will continue to work will all scheduled creditors and creditors that timely filed proofs of claim to resolve any concerns or potential objections.

The Debtor recently filed a Motion for Order (I) Approving Certain Investor Agreement, (II) Authorizing Payment of Certain Success Fee, (III) Granting Consensual Carve-Out Lien to the Investor, and (IV) Authorizing the Release of the Deposit to Malom Group AG (the "Initial Motion"). The Court has scheduled a hearing on the Initial Motion for June 29, 2011. The Debtor intends to withdraw and replace the Initial Motion by the filing of this Motion. In support of this Motion, the Debtor respectfully states as follows:

## Relevant Background

1.  On June 27, 2008, the Debtor filed its voluntary petition for relief in the United States Bankruptcy Court for the District of New Hampshire (the "Bankruptcy Court") under Chapter 11 of 11 U.S.C. §§ 101 et seq. The office of the United States Trustee has approved the Committee on July 15, 2008, as reconstituted or changed on June 24, 2009.

2.  The Debtor owns 100% shares of common stock of USA Springs, Inc., a New Hampshire corporation ("N.H. Corp."). The Debtor is the sole beneficiary under the Garrison Place Real Estate Investment Trust (the "Garrison Trust"), Just Cause Realty Trust (the "Just Cause Trust"), and the Sweet Review Realty Trust (the "Sweet Review Trust", collectively with N.H. Corp., Garrison Trust, and Just Cause Trust, the "Debtor Related Entities").

3. In connection with this bankruptcy case, the Debtor Related Entities have entered into a Jurisdiction Agreement, dated as of May 27, 2009 submitting themselves and their assets to the jurisdiction of the Bankruptcy Court; Amici Real Estate Trust also entered into a separate jurisdiction agreement, dated as of May 27, 2009, submitting itself and its assets to the jurisdiction of the Bankruptcy Court.

4. The Debtor filed its second amended disclosure statement with the Court on July 30, 2010 (the "Disclosure Statement"). The Court entered an order approving the Disclosure Statement also on July 30, 2010.

5. On October 7, 2010, the Court entered an Order Granting Debtor's Oral Motion for an Order Approving Supplemental Notice and Voting Procedures Relating to Debtor's Fourth Amended Plan of Reorganization setting October 20, 2010 as the deadline for voting on and objecting to confirmation of the Current Plan (as defined below).

6. On October 8, 2010, the Debtor filed with the Court the Fourth Amended Plan of USA Springs, Inc. and Related Entities Under Chapter 11 of the Bankruptcy Code (the "Current Plan").

7. All of the Debtor's creditors who are entitled to vote have accepted the Current Plan except for Roswell Commercial Mortgage, LLC ("Roswell") which did not vote to accept the Current Plan. Roswell and the Debtor have engaged in negotiations in connection with an acceptable modification of the Current Plan.

8. After the initial hearing on confirmation on October 21, 2010, the Court continued the confirmation hearing on the Current Plan from time to time with the assent (or non-objection) of the parties.

9. The proposed lenders under the Current Plan have, among other things, defaulted and failed to provide the Debtor with a definitive closing date in order to facilitate confirmation of the Current Plan. As a result, the Debtor, pursuant to the alternative transaction provisions of the Current Plan, has been in negotiations with Malom with respect to facilitating confirmation of the Current Plan.

10. On May 18, 2011, the Debtor filed a Motion for Order (I) Authorizing Modification of Chapter 11 Plan Prior to Confirmation with Respect to Potential New Transaction, and (II) Granting the Debtor an Additional Thirty Days Related to Such Transaction (the "<u>Motion to Modify</u>").

11. On May 20, 2011, in response to the Motion to Modify, the Court authorized the Debtor to file the Initial Motion related to the Deposit and the Transaction on or before June 20, 2011.

## <u>Jurisdiction</u>

12. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

13. Venue of this proceeding and this Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

14. The statutory predicates for the relief sought herein are sections 105(a), 363, 364, and 503 of the Bankruptcy Code; and Rules 2002, 6004, 9007 and 9013 of the Federal Rules of Bankruptcy Procedure.

## <u>Malom Transaction; Required Deposit; Funding Commitment</u>

15. The Debtor has reached an agreement with Malom in connection with a transaction involving funding of a certain US $60 Million debt offering to be made in the form of

structured note(s) (the "Structured Note") that is to be underwritten and thereafter privately placed to subscribers by Malom (the "Transaction"). A redacted copy of the Funding Commitment is attached hereto as Exhibit A.

16. In order for Malom to underwrite, credit enhance and securitize the Structured Note; cause the Structured Note to be listed on a Western European exchange; and privately place the Structured Note to subscribers with whom it enjoys pre-existing relationships, it is necessary for a third party to invest (or loan) and deposit US $1,200,000.00 (the "Deposit")[3] to be used for certain remaining costs necessary for Malom to complete the Transaction. In light of certain timing issues, the Deposit has been released to Malom before the filing of this Motion in accordance with instructions agreed upon by Malom and the Investor.

17. In addition to the Investor Agreement, the Debtor and Malom have negotiated the terms of the following transaction documents: (i) guarantee on underwriting fee, (ii) joint escrow instructions (the "Escrow Agreement"), (iii) the Funding Commitment, and (iv) certain other ancillary documents.

18. A summary of the material terms related to the Funding Commitment and the Transaction is set forth as follows:[4]

| | |
|---|---|
| ***General Terms/ Transaction*** | Malom will underwrite a certain US$60 Million debt offering to be made by the Debtor in the form of the Structured Note and to be privately placed to subscribers. |
| ***Collateral*** | All existing real and personal property assets including the improvements thereto, including without limitation any and all assets to be hereafter |

---

[3] The initial documents filed with the Court regarding the Malom Transaction referred to a deposit of $2,400,000.00 representing the underwriting fee. Through further negotiations between the Debtor, Malom, and the Investor, the initial amount has been reduced to $1,200,000.00 with any balance related to such underwriting fee to be reimbursed from the funding proceeds.

[4] This summary of material provisions of the Transaction is intended solely to give the Court and counsel to parties-in-interest in this case an overview of the material terms. Such interested parties should refer to the applicable transaction documents for the complete terms thereof. To the extent that any inconsistency exists between this Motion and such transaction documents, the transaction documents shall control.

| | |
|---|---|
| | acquired with the proceeds of sale of the Structured Note. In addition to the real and personal property described above, the collateral shall include but not be limited to: (i) the common stock and/or membership interests or beneficial ownerships of any entity holding title to the real and personal property assets; (ii) the intellectual property of the foregoing including trademarks, service marks, trade names and copyrights of the Debtor, if any; (iii) all furniture, fixtures and equipment presently owned or hereafter acquired by the Debtor; (iv) certain permits and licenses; (v) any and all sale and service contracts; (vi) any cash deposits; and (vii) any accounts receivable. |
| *Funding Commitment* | Malom has issued the Funding Commitment. |
| *Interest* | Not to exceed 420 basis points over comparable maturing United States Treasuries to be fixed at the time of initial issuance of the Structured Note to the subscribers.<br><br>Interest to be paid annually in arrears with balloon payment of principal at maturity of the Structured Note. |
| *Term/ Maturity* | 5 years |
| *Equity* | The Modified Plan (as defined below) will disclose any equity interests to be issued by the Debtor to third parties in connection with the Transaction. |
| *Malom Fees* | Success Fee: 1.5% of the maturity face value of the Structured Note sold.<br><br>Origination Fee: Not to exceed 3.0% of the principal funding amount to be fixed at the time of initial issuance of the Structured Note to the subscribers.<br><br>Initial Underwriting Fee: $1,200,000.00 to be paid in accordance with the terms and conditions set forth in the funding commitment.<br>Any additional fees not covered by the initial underwriting fee shall be reimbursed to Malom separately from the funding proceeds. |
| *Other Fees and Costs* | As set forth herein and in the Investor Agreement, the Investor shall receive the Success Fee.<br><br>The Modified Plan (as defined below) will disclose any additional amounts to be paid to third parties in connection with the Transaction. |
| *Other Terms* | Subject to approval of the Bankruptcy Court, the Debtor shall not terminate the Funding Commitment and/or fail to cooperate in the execution of documents necessary for the creation of the Structured Note and may not terminate any related agreements with Malom, absent a breach by Malom. In the absence of any breach by Malom, if with the consent of both the Debtor and Investor, the Debtor anticipatorily repudiates the funding to take place or refuses to accept the funds generated by Malom's activities on the terms set forth herein, Malom shall |

|   | not be obligated to refund the Deposit. |
|---|---|
| **Closing Date** | The closing date shall be about 120 days from court approval of this Motion. |

19. After approval of this Motion, the Debtor intends to modify or amend the Current Plan to, among other things, incorporate the Transaction and include the modifications set forth in the Motion to Modify (the "Modified Plan"). The Debtor expects to file such Modified Plan on or about July 15, 2011.[5]

### Investor Agreement and the Success Fee

20. Under the Investor Agreement, in the event Malom's efforts are successful and the transaction is consummated pursuant to the terms of the funding commitment, the Debtor has agreed to pay to the Investor at closing a success fee in the amount of $600,000.00 (the "Success Fee") in addition to the reimbursement of the $1,200,000.00 Deposit to the Investor, without further order of the Bankruptcy Court. A redacted copy of the Investor Agreement is attached hereto as Exhibit B.

21. In the event Malom's efforts are not successful and the Transaction is not consummated pursuant to the terms of the funding commiment, the Investor shall receive from Malom the return of the Deposit plus $50,000.00 (collectively with the Deposit, the "Owed Deposit").

22. In addition, Malom, the Investor, and the Debtor have negotiated the following further protections in connection with the Investor Agreement (the "Additional Protections"):

    (i) Malom shall maintain an account with a certain international Bank acceptable to the Debtor and the Investor (the "Bank") with a balance of cash or cash equivalents of

---

[5] As provided in the Motion to Modify, in the Modified Plan, among other things, (ii) the Debtor will propose additional interest payments of 4.5% to Roswell on the claim amount of $9.85 Million from January 15, 2011; and (ii) distribution to certain non-shareholder trade creditors will be increased from 84% to 100% which would be made possible by certain creditors that are friendly to the Debtor consenting to the deferral or reduction of payments.

not less than the equivalent of Two Million Five Hundred Thousand US Dollars (US$2,500,000.00) (the "Account") from which Account the repayment of the Owed Deposit to the Investor will be made without delay in the event Malom's efforts are not successful or in the event of an Event of Default (as defined in the Investor Agreement).

(ii) Malom shall cause issuance of a specific type of "Bill of Exchange" known under Swiss law as a "Wechsel" in favor of the Debtor and its assigns to be dated 120 days from the date of Malom's receipt of the Deposit (the "Bank Draft"), which document shall be in form and substance reasonably satisfactory to the Debtor and the Investor, and shall, at a minimum, (i) provide that "it is a Wechsel prepared by one party to pay another party on behalf of a third party"; (ii) shall be an unconditional, non-cancellable obligation of Malom to pay the "Owed Deposit" in immediately available funds; (iii) shall be in the name of the Debtor c/o Alan Braunstein, Esquire, to be held in escrow by Riemer & Braunstein, LLP which shall be assigned by the Debtor and delivered to Investor by escrow only upon an Event of Default (as defined in the Investor Agreement).

(iii) Malom's counsel will present an opinion letter acceptable to the Investor asserting, among other things, that (a) counsel is fully familiar with the terms of the Investor Agreement, the Escrow Agreement, the guarantee of the underwriting fee, the Consent Judgment (as defined below), the waiver of protest, the Bank Draft, and the funding commitment; (b) the Bank Draft is an unconditional negotiable instrument that when issued by Malom shall be payable without protest upon its maturity and presentation to the Bank, EFG Bank (Zurich); (b) Malom has the financial capacity to immediately repay the Owed Deposit; (c) Malom is a solvent corporation (d) Malom is authorized to conduct the transaction contemplated in the funding commitment; (e) Malom has reviewed, agreed and has the authority to execute the Investor Agreement; (f) the Wechsel is a valid Bill of Exchange; and (g) Malom's counsel is authorized counsel to Malom and is authorized to provide such opinion.

(iv) Malom shall execute a waiver of protest for the Bank Draft, which shall also be held in escrow by Riemer & Braunstein LLP and delivered to Investor only upon the occurrence of an Event of Default.

(v) Malom hereby consents to the Bankruptcy Court having the authorization to exercise jurisdiction over the funds in the Account. Malom also consents to judgment and/or order of the Bankruptcy Court (the "Consent Judgment") to be held in escrow by Riemer & Braunstein, LLP and not filed with the court unless an Event of Default (as defined in the Investor Agreement) occurs.

(vi) Malom will provide the Investor with monthly bank statements upon request from the Investor evidencing the amount of funds held in the Account.

23. Upon the occurrence of an Event of Default (as defined in the Investor Agreement), the Investor and/or the Debtor, as applicable, shall have the rights set forth in the Investment Agreement including with respect to the Bank Draft, the Consent Judgment, and the Account.

### Carve-Out Lien and Administrative Expense Claim

24. As additional security for repayment of the Owed Deposit, the Investor shall be granted a contingent carve-out lien by Roswell in the amount of $1,300,000.00 payable after the first $9,000,000.00 available for any allowed Roswell claim in the event that the Transaction is not consummated (the "Carve-Out Lien"). Any further disbursements on account of Roswell's claim after payment in full of the Carve-Out Lien to the Investor shall be retained by Roswell. To the extent that Roswell's claim is allowed in an amount less than $9,000,000.00, then the Investor shall have an allowed administrative expense claim in the bankruptcy case of the Debtor for the Deposit if and to the extent not collected through Malom; *provided that* (i) such allowed administrative expense claim of the Investor shall be subordinated to the allowed administrative expense claims of existing creditors, including professional fees (the "Subordinated Administrative Claim"), and (ii) the Carve Out Lien and the Subordinated Administrative Claim, as applicable, shall be subject to the Investor first exhausting any and all rights and remedies against Malom with respect to the Account, Bank Draft, the Consent Judgment or otherwise.

25. Such Carve-Out Lien to the Investor shall be deemed automatically null and void upon return of the Owed Deposit to the Investor.

26. The Carve- Out Lien shall not in any manner impact the lien asserted by Aho to the extent Aho has a valid and enforceable lien senior to that of Roswell. Nothing contained herein shall constitute any determination regarding the validity, priority or amount of any lien.

27. For the avoidance of doubt, as requested by the Town of Nottingham, the Debtor confirms that the Carve-Out Lien shall be subordinated to all real estate taxes and tax liens.

**Relief Requested**

28. By this Motion, the Debtor respectfully requests entry of an order (i) approving the Investor Agreement with the Investor and the Commitment Documents; (ii) authorizing payment of the Success Fee to the Investor; and (iii) granting the contingent Carve-Out Lien to the Investor with respect to the Owed Deposit and a Subordinated Administrative Claim for the Deposit, if applicable, as set forth herein.

29. The Debtor requests that the Success Fee and the Malom fees and costs under the Funding Commitment be paid at closing without further order of the Bankruptcy Court.

30. The Investor Agreement and the Commitment Documents are the result of good faith, arm's length negotiations. The Court should authorize the Debtor to enter into the Investor Agreement and the Commitment Documents, and approve the related terms and conditions, in order to improve the Debtor's chances to emerge from this chapter 11 case while maximizing value to the various economic constituencies in this case and at the same time allow the Debtor to finish construction of its facility and promptly proceed with operation of its business.

*A.     Approval of Investor Agreement and Commitment Documents*

31. Section 363(b) of the Bankruptcy Code provides that the debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Also, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

32. Where a debtor seeks authority to act under Bankruptcy Code § 363, the debtor's actions should be approved if such debtor demonstrates good faith, the exercise of sound business judgment, and a benefit to its bankruptcy estate. See, e.g., In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001). See also Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), court will generally not entertain objections to debtor's conduct."); In re Logical Software, Inc., 66 B.R. 683, 686 (Bankr. D. Mass. 1986) (a debtor's business decision should be accepted by the bankruptcy court unless it is shown to be "so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.").

33. The Debtor's decision to enter into the Investor Agreement and the Commitment Documents would benefit the Debtor's estate and its creditors and reflects an exercise of the Debtor's business judgment. The Investor Agreement and the Commitment Documents are the product of good faith, arm's-length negotiations between the Debtor and the other parties.

34. The proposed Transaction represents the best restructuring alternative currently available to the Debtor. The Debtor has been on record for three years regarding the need to obtain a significant investment commitment to complete its plan of reorganization process and construction of its facility. The Debtor, therefore, requests that the Court approve the Investment Agreement and the Commitment Documents as ser forth herein.

### B. The Success Fee is Reasonable and Should be Allowed

35. To induce the Investor to make the Deposit available for the Transaction, the Debtor has agreed to pay the Success Fee after negotiations with several parties.

36. As discussed above, in the event the Transaction is not consummated, Malom has agreed to return the Deposit to the Investor. While this minimizes the risk and evidences Malom's confidence in completing the Transaction, finding an Investor with sufficient and ready funds to invest the Deposit for the benefit of the Debtor and its estate despite the uncertainties of the chapter 11 process and the proposed Transaction warrants incentives such as the Success Fee to the Investor which would encourage the Investor to invest the requisite time, money, and effort to negotiate with the Debtor and perform necessary due diligence with respect to the Debtor, Malom and the Transaction.

37. The Deposit is absolutely necessary so that the Debtor and Malom can move forward with the Transaction. The Debtor's ability to offer the Success Fee to the Investor enables the Debtor to ensure the Transaction and the payments to creditors as contemplated in the Current Plan.

### C. The Carve-Out Lien and Administrative Expense Claim Should be Granted

38. Roswell asserts a secured claim on substantially all assets of the Debtor and certain related entities with a filed pre-petition claim amount of approximately $8,559,171.00 (plus attorneys' fees).[6] Aho also asserts a mechanic's lien for $206,330.00 (plus certain breach

---

[6] Pursuant to the Current Plan, the Debtor and Roswell have negotiated a total claim amount of $9,850,000.00 on which the Debtor has agreed to pay interest of 4.5% beginning January 15, 2011 through closing of the Malom Transaction in connection with the Modified Plan to be filed by the Debtor.

of contract claim),[7] Other creditors that have junior liens and/or mortgages on real estate assets of the Debtor and related entities include the following creditors:

| Creditors | Scheduled Claim | Filed Claim |
|---|---|---|
| Dorothy Sajous | $380,000 | No claim filed. |
| Frank Carozza | $375,000 | No claim filed. This creditor has assented to the Motion. |
| Richard and Donna Mignault | $208,000 | $269,583.40 (including interest and penalty). The lien or mortgage of this creditor is cross-collateralized on another property. |
| William (Bill) Gianopoulos | $602,000 | No claim filed. This creditor has assented to the Motion. |

39. As mentioned above, the Investor will be granted a Carve-Out Lien by Roswell if the Transaction is not consummated contingent upon the ultimate allowance of Roswell's secured claim in an amount that is more than $9,000,000.00 and sufficient with respect to the Owed Deposit amount; *provided that* to the extent that Roswell's claim is allowed in an amount less than $9,000,000.00, then the Investor shall have a Subordinated Administrative Claim in the bankruptcy case of the Debtor for the Deposit if and to the extent not collected through Malom that is junior to the allowed administrative expense claims of existing creditors, including professional fees. Also, the Investor would only be entitled to the Carve Out Lien and the Subordinated Administrative Claim, as applicable after the Investor first exhausts any and all rights and remedies against Malom with respect to the Account, Bank Draft, the Consent Judgment or otherwise.

---

[7] Diom, LLC has a scheduled contingent secured claim (mechanic's lien) for $256,249.98. Upon information and belief, Diom, LLC only asserts an unsecured claim for that amount (plus certain breach of contract claim).

40. The granting of the Carve-Out Lien to the Investor does not require the subordination of the Other Secured Creditors. To the extent Roswell does not have an allowed claim that is more than $9,000,000.00, then the Investor would not be entitled to the Carve- Out Lien (subject to the Subordinated Administrative Claim). Also, no other liens would be negatively impacted by the Carve-Out Lien to the Investor.

41. In addition, the Debtor believes that the other secured creditors would assent to the Motion or would not object to the granting of the Carve-Out Lien to the Investor. In fact, it is in the creditors' best interests to facilitate the Carve-Out Lien and the Subordinated Administrative Claim, as applicable, to the Investor so that the Debtor can obtain the Deposit and move forward with the Malom Transaction. As already stated, in the unlikely event Malom's efforts are not successful, Malom has agreed to return the Deposit to the Investor, thereby making the Carve-Out Lien to the Investor null and void. The parties have also negotiated the additional protections discussed above in terms of the Additional Protections. As provided in the Investor Agreement, Malom has consented to the jurisdiction of the Bankruptcy Court. The Investor or the Debtor, on behalf of the Investor, shall have the right to assert claims or actions against Malom in the Bankruptcy Court.

42. Without the Deposit and the Investor, the Debtor cannot pursue the Transaction which would benefit the Debtor, its estate and creditors. As stated above, the proposed Transaction represents the best restructuring alternative currently available to the Debtor. The Debtor, therefore, requests that the Court approve the Carve-Out Lien and the Subordinated Administrative Claim as set forth herein.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the Motion and such other relief as may be just and proper.

Dated: June 27, 2011

Respectfully submitted,

USA Springs, Inc.
By its attorneys

*/s/Alan L. Braunstein*
Alan L. Braunstein (BNH 01544)
RIEMER & BRAUNSTEIN LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
abraunstein@riemerlaw.com